THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES W. SPANI, Defendant-Appellant.

Third District No. 76-211

Opinion filed March 31, 1977.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce Black, State's Attorney, of Pekin (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Charles W. Spani, the defendant, after a bench trial was found guilty by the Circuit Court of Tazewell County with having committed the offense of involuntary manslaughter. He was sentenced to a term of not less than one nor more than three years in the penitentiary. The defendant testified that the events which resulted in his conviction commenced during the evening hours of March 9, 1975, at which time he was frequenting a place of business known as the Catt-A-Club. While at the club the defendant met a 38-year-old woman known as "Lillie Mae" and hereinafter referred to as the victim. The victim was accompanied by her young daughter and as the evening progressed a suggestion was made that all of them would go to the victim's apartment. This suggestion was agreed to and the defendant drove to the apartment; however, before he left his automobile he removed from the glove compartment of his car a pistol which he placed on his person. The defendant testified that he had borrowed the gun sometime previously since he needed it to obtain the return of a liquor decanter, to-wit, a "Jim Beam" bottle which had been taken from him. The defendant further testified that he took the gun into the apartment with him for protection in the event he encountered therein a boyfriend or husband. While at the apartment the defendant and the victim continued to drink and eventually the daughter of the victim, a little girl, was put to bed. It was ultimately decided that the defendant and the victim would go to bed; however, before doing so the defendant started to go to the bathroom, then remembering the pistol, removed it from his waistband and proceeded to lay it on the table when it discharged and the victim was shot in the head. This is the defendant's version in regard to the fatal shot; however, prior to his trial he stated that he had pointed the gun at the head of the victim, which was lying on the table, and that the gun discharged. Following the shooting the defendant took the little girl, the daughter of the victim, to his girl friend's house. He

also remained there until 4:45 a.m. at which time he bundled up the little girl and returned with her to the apartment of the victim, but being unable to gain entrance because of the door being locked he returned the child to his friend's house. He then stopped at the Catt-A-Club for a beer, after which he proceeded to the police station and explained to the officers present what had occurred.

When talking to the police personnel the defendant on several occasions referred to the shooting as an accident and on one occasion stated that he was drunk and didn't mean to shoot the victim. The defendant surrendered the pistol to the police and accompanied by several officers returned to the victim's apartment. It was necessary to force entry into the apartment and after this was accomplished they found the victim's body slumped over a table.

A firearms examiner for the Illinois Bureau of Identification examined the pistol which the defendant had turned over to the police. Among the tests performed was one in which he cocked the gun and banged it on a table fifteen or twenty times in an attempt to make it fire. In this attempt the examiner was unsuccessful even though he used sufficient force to break the weapon's handle. Further tests determined that the trigger pull was approximately 10 pounds, which was characterized as a strong pull. It was the expert's opinion that the bullet found in the victim's body had been fired by the weapon surrendered by the defendant to the police.

There was unrefuted testimony adduced that the weapon had a right hand ejection aperture and counsel for the defense argued that in light of where the shell casing was found in the victim's apartment the gun would have had to have been on its side when it was discharged.

During the trial it was conceded by all the investigating officers that the defendant was quite cooperative.

The first issue presented in this appeal is that the victim met her death by misadventure and that the State failed to meet its burden of proving the offense of involuntary manslaughter beyond a reasonable doubt.

■■ Our initial reaction is that the trial court as a trier of fact in a criminal prosecution is peculiarly suited to determine questions of truthfulness and a reviewing court should not readily substitute its own conclusion unless the proof is so unsatisfactory as to justify a reasonable doubt of guilt. We are also cognizant of the rule that a criminal defendant is not required to testify but if he does his testimony will be judged by its improbabilities. (See *People v. Rollins* (1976), 42 Ill. App. 3d 308, 356 N.E.2d 124.) Should we have followed this initial reaction then the judgment of the trial court would have been affirmed; however, we find that the record in this case will not support an affirmance.

The defense of the defendant was that the death of the victim was the result of a misadventure, or in other words an accident. A detective of the East Peoria Police Department testified at a coroner's inquest that the

shooting was accidental and reiterated this opinion during the course of the defendant's trial. We, however, are not disposed to analyze the evidence adduced during the course of the trial since we are far more concerned with the trial judge's remarks and observations. During the course of the defendant's trial the court stated:

"\* \* \* Well, I think this was an accident. Isn't that what involuntary manslaughter is all about—it was an accident?"

Again during the course of the trial the court made the following remarks:

"I am not willing to accept, at this time, that calling it an accident answers the question. I think there may have been some sloppy language in the Supreme Court decision—on calling it an accident doesn't mean that he is not guilty of involuntary manslaughter because that is what involuntary manslaughter is all about—is an accident—something people didn't intend. \* \* \*"

During the sentencing hearing the court offered the following comments:

"At that time [referring to the trial] and at this time, I didn't find Mr. Spani did anything intentionally. It was an accident, as his attorney argued, it was an accident, but I felt that it was an accident caused by reckless conduct on his part and therefore, that made him guilty of involuntary manslaughter. \* \* \*"

■■■ We are confronted with one unchallengeable conclusion and that is that the trial court was of the opinion that the defendant's shooting and killing the victim was an accident. The trial court, being the sole trier of the facts in a bench trial, having reached this conclusion then a finding by the court that the defendant was guilty of involuntary manslaughter cannot stand. An act that is committed accidentally does not involve a mental state cognizable to the criminal offenses of murder and involuntary manslaughter. (See *People v. Carlton* (1975), 26 Ill. App. 3d 995, 326 N.E.2d 100.) A material element of every offense is a voluntary act. (Ill. Rev. Stat. 1975, ch. 38, par. 4—1.) An accident is not a voluntary act nor can accidental conduct be equated with "recklessness" which is an element of the offense of involuntary manslaughter. See *People v. Carlton* (1975), 26 Ill. App. 3d 995, 326 N.E.2d 100.

We are loath to reverse a conviction on technicalities; however, we are equally loath to sustain a conviction where the requisite elements of a crime are not present. The trial court made it abundantly clear that the tragedy in the instant case was accidental and such being the case the judgment of the Circuit Court of Tazewell County is reversed.

Judgment reversed.

STENGEL, P. J., and BARRY, J., concur.