THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SHAWN R. PROCTOR, Defendant-Appellant.

Third District   No. 79-534

Opinion filed June 9, 1980.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Having been found guilty in a bench trial of intimidation, aggravated assault and one count of the unlawful use of weapons, and having been sentenced, as a result, to 2½ years in prison for intimidation and a concurrent 364-day sentence for the unlawful use of weapons, the defendant, Shawn Proctor, instituted this appeal. Charges were brought against the defendant in a four-count information.

Count I charged that the defendant committed the offense of intimidation by communicating a threat of physical harm to William Johnston with the intent to cause Johnston to perform the act of getting into an automobile. Count II charged the defendant with aggravated assault in that he knowingly pointed a gun at William Johnston, thereby placing Johnston in reasonable apprehension of receiving a battery. Count III charged the defendant with the unlawful use of weapons in that he knowingly carried concealed in a motor vehicle a .38-caliber revolver, and count IV charged the defendant with the unlawful use of weapons in that he knowingly possessed within the corporate limits of the village of Bartonville, Illinois, a loaded .38-caliber revolver.

On April 19, 1979, the defendant was arraigned on each of the four counts in the information. At this time, a copy of the information was presented to the defendant. With respect to each of the counts defendant pleaded not guilty and requested a jury trial.

However, before proceeding to trial, and after the trial judge indicated for the record that the instant case was entitled People of the State of Illinois v. Shawn R. Proctor, here on charges, by information, of intimidation in count I, aggravated assault in count II, and unlawful use of weapons in count III, the defendant, in the presence of defense counsel, waived his right to a trial by jury.

Shortly after the defendant's jury waiver the cause proceeded to trial before the court. The defendant, who resided in West Peoria and was employed as a maintenance person for King's Park Mobile Estates, testified that, in the morning, before going to work, he would regularly purchase and drink a half pint of whiskey or a twelve pack of beer. At lunchtime he would usually pick up an additional six pack of beer or a half pint of whiskey.

On the 29th of March, the defendant did not drink the usual amount at work since he had "tied one on pretty good" the night before. He did this after discovering that his wife was going to move out because she could not tolerate his drinking any longer. The defendant left work that day to go home at 4 p.m. After he arrived, he consumed an entire half pint of Yukon Jack whiskey. Around 5 p.m., he went to Arcade Liquors and bought a fifth of Southern Comfort, which he consumed until 9 p.m., drinking straight out of the bottle the entire time. Although the defendant did not know for certain the quantity of the fifth that he consumed, he drank at least another half pint, and it could have been a third of the bottle or even the whole bottle.

On the 29th of March, 1979, at approximately 9 p.m., Trooper Johnston was on duty, driving his squad car on Route 24 south of Bartonville. He turned around on Route 24 and proceeded in the direction of Bartonville after receiving a citizen's band radio report from a truck driver. At that time, he observed a yellow Ford Maverick driving in an erratic manner. The Maverick would travel from the driving lane to the passing lane, bump the curb which separates the road on this four-lane highway and then bounce off the curb, travel across the passing lane of the paved portion of the road onto the shoulder and then travel back onto the driving lane. The car covered a total width of three lanes while doing this.

After following the vehicle for about a half or a quarter of a mile, Trooper Johnston believed that the driver was intoxicated. So he turned on his red lights and pulled the vehicle over. Johnston parked his squad car approximately 15 feet behind the vehicle, put his stoplights on in the rear of his car and turned his bright lights on so he could view the vehicle. This stop occurred on Route 24, a public highway, within the corporate limits of Bartonville, Illinois.

Johnston then exited his car and walked up to the driver's side of the vehicle. He asked the driver, the defendant, to show him his driver's license.

The defendant testified that he saw a person standing outside his window but could not hear what was being said since his window was inoperable. The defendant therefore opened his door.

The defendant exited his car from the driver's side rather slowly. As

Johnston finished asking the defendant to display his driver's license, the defendant was about halfway out of his car, with one foot out and beginning to raise his body. This was an awkward position since his shoulder was tilted to some extent, but he was looking up at Johnston. At this time, Johnston observed a gun in the defendant's right hand coming across in front of the defendant. Johnston was possibly six inches away from the car door, and the gun was approximately one foot away.

Although the defendant did not vocalize any threats, he told Johnston to get in the car. Johnston believed that the subject might shoot him, and, after observing the barrel of the gun pointed at his upper torso and head area, Johnston stepped backward, ran around the front of the defendant's vehicle and dove into a ditch. As he turned around, while drawing his service revolver, Johnston saw the defendant's car pull away.

The defendant testified that when he opened his door and observed no one there, he just left. He did not remember saying anything or pointing a gun. Based upon past experience, the defendant attributes his loss of memory to intoxication. He testified that he never has or never would intentionally point a gun at a police officer or hurt a police officer because he realized the consequences of such an act. He did testify that he had possessed the gun for the preceding two days.

After the defendant's car drove off, Johnston ran out of the ditch into his car and began to pursue the vehicle. He radioed that he was in pursuit of a vehicle and that the subject driving was armed and believed to be drunk. This belief was due to the observance of the defendant's driving actions prior to the initial stop. Johnston followed the defendant eastbound on Route 24 through Bartonville. The defendant made a left turn on Collier Street, drove up half a block, parked on the wrong side of the street, jumped out of his car and ran up the alley behind a row of houses.

Johnston exited his vehicle and attempted to parallel the defendant between the houses. However, he was unsuccessful and thus lost sight of the defendant. He searched the area briefly when another officer arrived and later searched the entire area after other police officers arrived. Johnston then went to the Bartonville police department and identified a picture of the defendant. Thereafter, Johnston, Sergeant Frank Schaefer and Troopers Callison and Syron proceeded to the 801 Club, a restaurant and tavern located within the corporate limits of the village of Bartonville, Illinois.

Upon arriving at the 801 Club, Schaefer entered through the side door and Johnston entered through the front door. Schaefer, with his weapon drawn, observed the defendant standing at the bar by himself with a glass "of something" in front of him. The defendant's right hand was in his right pocket, and his left hand was not visible to Schaefer.

Schaefer pointed his weapon at the defendant and advised him to remove his hands from his pockets slowly. After the defendant obliged, Schaefer instructed the defendant to turn around, face the wall, put his hands on the wall and back away with his feet. Schaefer then frisked the defendant. He felt a hard object in defendant's left jacket pocket and removed a loaded .38-caliber Smith and Wesson pistol. Schaefer placed the weapon in the waistband of his trousers, and the defendant was arrested and transported to the police station.

Trooper Terry Callison testified that he unloaded the weapon. It contained five rounds, which was all it was capable of holding. Callison determined from subsequent examination that the gun was a .38-caliber Smith and Wesson. Johnston testified that he believed the weapon recovered was the same weapon as had been pointed at him earlier that evening. Neither Callison, Johnston nor Schaefer noticed the smell of alcohol on defendant's breath during the foregoing course of events on March 29.

On the 30th of March, 1979, at approximately 10 a.m., Agent John Kelsey had a conversation with the defendant at the Peoria County Jail in the detective office. After the defendant had been read his rights and had initialed a rights waiver form which indicated he understood each and every right, Kelsey asked the defendant where he was drinking and what he was drinking during the preceding night. The defendant responded that he either could not recall or that he was confused. Kelsey then asked the defendant to write down in his own handwriting what had occurred during the preceding night. Kelsey recalled to the best of his knowledge that the defendant wrote down that he did not care to make a statement at the time due to not being accurate because he was confused.

At the close of the State's case in chief, the defendant's motion for a directed verdict was granted as to count III of the information which charged defendant with possessing a concealed weapon in his automobile. This motion also alleged that the State had failed to establish the defendant's specific intent to commit the offense of intimidation, but as to all counts, except count III, the motion was denied. After hearing all the evidence, the court found the defendant guilty of intimidation as charged in count I, aggravated assault as charged in count II, and unlawful use of weapons as charged in count IV of the information. The cause was then continued for a hearing on post-trial motions and sentencing.

The defendant's post-trial motion also contended that the State had failed to establish specific intent. After announcing that he had read and considered the defendant's motion, the trial judge denied the motion. Yet, at the sentencing hearing, the trial judge made the following comments:

"The criminal conduct seems to have been the result of drinking

* * *

[A]nybody knows that an adult with any sort of judgment at all, that when you mix an automobile and alcohol, there is apt to be destruction, death and injury. It's an everyday occurrence. That has to be taken in regard by the person before he drinks. After he has consumed enough that his judgment is dim, he cannot be expected then to make those judgments.

❊ ❊ ❊

If the person is going to mix alcohol and guns, and automobile, doesn't have the incentive, doesn't feel motivated by the harm and killing and injury that he can do ❊ ❊ ❊

❊ ❊ ❊

I find as a very aggravating factor that his conduct here, has been that would threaten serious harm, not intentionally, but done knowingly. Any adult knows that when you get to drinking too much, and you waive [*sic*] a gun around—

I have said this several times, and would like for it to soak in—you are apt to kill somebody."

This sentencing proceeding was held on June 29, 1979.

The first issue raised by the defendant is whether the defendant's conviction for intimidation must be reversed because the trial court, as evidenced by the statements made during the sentencing hearing, found the defendant's mental state to be knowledge or recklessness rather than the specific intent required for an intimidation conviction. However, the defendant has failed to point out any statement made during the trial from which it could be inferred that the trial court misapprehended or misapplied the law.

In *People v. Spani* (1977), 46 Ill. App. 3d 777, 361 N.E.2d 377, the trial court was found to have misapprehended the law. This conclusion was based on statements made during the trial as well as at the sentencing hearing. In the case at bar, the statements complained of were made more than a month after the defendant was found guilty.

Although the relevance of the judge's statements at the sentencing hearing to the finding of guilty appears questionable in the first instance, we find that the statements made do not, in any event, reflect that the defendant was found guilty on the basis of a lesser mental state. At the sentencing hearing, the trial court concluded that the defendant did not intend to harm anyone but could very likely have done so. But intent to harm another is not an element of intimidation.

■■ ■ While intimidation is a specific intent crime (*People v. Randle* (1976), 38 Ill. App. 3d 720, 348 N.E.2d 488), that specific intent is to cause another person to perform or omit the performance of any act (Ill. Rev. Stat. 1977, ch. 38, par. 12—6(a)). Here, the trial judge admonished the defendant because he could have harmed someone because he mixed

alcohol, driving and carrying a pistol. This does not indicate the trial court found at the trial that the defendant's alleged voluntary intoxication was so extreme as to suspend all reason, and thereby to negate the existence of the specific intent, which would be the appropriate standard in this case. (See *People v. Jones* (1978), 67 Ill. App. 3d 477, 384 N.E.2d 523.) As a result, the defendant's contention is without merit.

In his second issue, the defendant argues that the conviction for the unlawful use of weapons should be reversed because the State failed to prove beyond a reasonable doubt the defendant's possession of a loaded revolver in a place within the corporate limits of a city, village or incorporated town which was neither the land nor fixed place of business of the defendant. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 24—1(a)(10).) The statutory exceptions must be negated by the State beyond a reasonable doubt. *People v. Chmilenko* (1976), 44 Ill. App. 3d 1060, 358 N.E.2d 1247.

■■ The defendant contends that the State did not prove the 801 Club was neither the defendant's land or place of business or that the defendant's revolver was loaded at any time prior to his being arrested in the 801 Club, especially when the trooper stopped the defendant's vehicle on the highway outside of town. The defendant was certainly in possession of a loaded revolver at the 801 Club, and this certainly leads to the logical inference, and the trial court could so find, that the revolver was loaded at the time the trooper stopped the defendant's car. Circumstantial evidence is sufficient to establish the unlawful use of weapons. (See *People v. Smith* (1978), 71 Ill. 2d 95, 374 N.E.2d 472; *People v. Preston* (1978), 61 Ill. App. 3d 434, 378 N.E.2d 372.) In addition, the defendant testified that he lived in West Peoria and worked as a maintenance person for King's Park Mobile Estates. It also seems to be a reasonable inference that the defendant was not the owner of the 801 Club. Therefore, the defendant was proven guilty beyond a reasonable doubt of the offense of the unlawful use of weapons.

Lastly, the defendant asks us to determine whether the conviction of the unlawful use of weapons, pursuant to count IV of the information, should be reversed because the trial court failed to obtain from the defendant a knowing and intelligent waiver of his right to trial by jury with respect to that charge. The State initially responds that this issue has been waived for the purpose of review because it was not presented in a post-trial motion.

■■ Ordinarily, a trial court should be given an opportunity to correct an alleged error, and the failure to do so constitutes waiver. (*People v. Anderson* (1979), 77 Ill. App. 3d 907, 396 N.E.2d 850.) However, an alleged error as to jury waiver could certainly affect a substantial right of

the defendant and, therefore, will generally be considered even though the issue has not been made a part of a post-trial motion, or otherwise preserved. (See *People v. Bristow* (1980), 80 Ill. App. 3d 535, 400 N.E.2d 511; *People v. Banks* (1979), 71 Ill. App. 3d 15, 389 N.E.2d 180.) While the trial court's failure to obtain a waiver is generally considered plain error (*People v. Bristow* (1980), 80 Ill. App. 3d 535, 400 N.E.2d 511; *People v. Banks* (1979), 71 Ill. App. 3d 15, 389 N.E.2d 180), if the failure is purely a ministerial oversight and the record demonstrates that the defendant intended to waive a jury trial in any event, the unobjected-to error will not be raised to the level of plain error. *People v. Eveland* (1980), 81 Ill. App. 3d 97, 400 N.E.2d 1078.

In the case at bar, after the trial judge referred to three of the four counts of the information pending against the defendant, the defendant, in the presence of counsel, knowingly and intelligently waived his right to a jury trial. It is evident that the defendant intended to waive his right to a jury trial in the entire proceeding, none of the counts having been severed. As a result, we find the trial court's failure to mention count IV was purely ministerial and did not affect the defendant's waiver. Therefore, the alleged error will not be considered plain error and is waived for the purpose of review.

For the foregoing reasons, the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.