THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD L. McQUEEN, Defendant-Appellant.

Fourth District    No. 4—92—0763

Opinion filed February 25, 1993.

Cavanagh & O'Hara, of Springfield (Patrick J. O'Hara and Michael W. O'Hara, of counsel), for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Edward F. Flynn, of Hull, Campbell & Robinson, of Decatur, for *amicus curiae*.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In August 1992, the State charged defendant, Ronald L. McQueen, with residential picketing, in violation of section 21.1—2 of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1991, ch. 38, par. 21.1—2). Later that month, the trial court conducted a stipulated bench trial on that charge. The court found defendant guilty and sentenced him to six months' court supervision. Defendant appeals, arguing that (1) the court erred by not holding that an exception within the residential picketing statute applied to defendant, and (2) the State failed to prove him guilty beyond a reasonable doubt. Although we conclude that the trial court properly construed the statute, we agree with defendant that the State failed to prove him guilty beyond a reasonable doubt and therefore reverse.

## I. FACTS

The sole evidence presented at defendant's trial consisted of the following stipulation, as stated by the prosecutor in open court:

1. Dr. and Mrs. Thomas Fulbright own the house and grounds at 560 Powers Lane, Decatur, Macon County, Illinois, and occupy that house as their residence.

2. Prior to August 13, 1992, Dr. and Mrs. Fulbright entered into a contract with Gates and Johnson Lumber Company (hereafter Gates and Johnson) for certain repairs and remodeling of their residence at 560 Powers Lane. Dr. and Mrs. Fulbright had no control over the hiring of subcontractors by Gates and Johnson. Gates and Johnson, as general contractor, hired Mark Wolfer to work as subcontractor in connection with certain aspects of the repair and remodeling at 560 Powers Lane, specifically construction and roofing work.

3. Gates and Johnson were solely responsible to pay Wolfer, as subcontractor, any payment to which he was entitled for services performed upon 560 Powers Lane.

4. Defendant, Ronald L. McQueen, is a member of the Sheet Metal Workers, Local 218. On August 13, 1992, defendant and Tim Massey (another member of Local 218) carried picket signs on behalf of Sheet Metal Workers, Local 218. Their signs specifically indicated that the picketing was intended to provide notice to the public that Wolfer was not meeting the prevailing wage and other economic conditions as established for sheet metal workers in the area. Defendant carried the sign upon the thoroughfare in front of 560 Powers Lane.

5. Decatur police officer Dan Holt asked defendant to leave the area of the residence at 560 Powers Lane. Defendant responded that he would not leave, but that, if arrested, he would go peacefully with Holt. Holt then arrested defendant.

6. At the time of his arrest, only defendant and Massey were picketing 560 Powers Lane.

7. At all times during his picketing, defendant did so peacefully, did not block ingress or egress of 560 Powers Lane, and did not utter any verbal threats of any kind.

8. Defendant picketed 560 Powers Lane only when Wolfer or his employees were working on that residence.

9. Wolfer is a subcontractor whose business includes the construction and repair of roofs.

After argument by counsel, the trial court found (1) the residential picketing statute (section 21.1—2 of the Code) clear and unambiguous;

and (2) the evidence contained in the stipulation sufficed to prove defendant guilty.

## II. STATUTORY CONSTRUCTION

In 1967, the legislature added article 21.1—dealing with residential picketing—to the Code. (1967 Ill. Laws 940.) That article, as amended, consists of three sections, with the first (section 21.1—1) containing the legislature's finding and declaration, the second (section 21.1—2) describing the prohibited conduct, and the third (section 21.1—3) containing the sentence. (Ill. Rev. Stat. 1991, ch. 38, pars. 21.1—1, 21.1—2, 21.1—3.) Section 21.1—1 of the Code reads as follows:

"The Legislature finds and declares that men in a free society have the right to quiet enjoyment of their homes; that the stability of community and family life cannot be maintained unless the right to privacy and a sense of security and peace in the home are respected and encouraged; that residential picketing, however just the cause inspiring it, disrupts home, family and communal life; that residential picketing is inappropriate in our society, where the jealously guarded rights of free speech and assembly have always been associated with respect for the rights of others. For these reasons the Legislature finds and declares this Article to be necessary." Ill. Rev. Stat. 1991, ch. 38, par. 21.1—1.

Section 21.1—2 of the Code reads as follows:

"It is unlawful to picket before or about the residence or dwelling of any person, except when the residence or dwelling is used as a place of business. However, this Article does not apply to a person peacefully picketing his own residence or dwelling and does not prohibit the peaceful picketing of the place of holding a meeting or assembly on premises commonly used to discuss subjects of general public interest." Ill. Rev. Stat. 1991, ch. 38, par. 21.1—2.

Defendant argues on appeal (as he did at trial) that the exception provided in the first sentence of section 21.1—2 of the Code—"when the residence or dwelling is used as a place of business"—applies because the Fulbrights' residence became a "place of business" when Wolfer and his employees arrived on those premises to perform construction and roofing work. (Ill. Rev. Stat. 1991, ch. 38, par. 21.1—2.) Defendant explains this argument further as follows:

"The Illinois residential picketing statute [(section 21.1—2 of the Code)] is clearly intended to enjoin picketing of the residences of individuals involved in public controversies or labor disputes where such residences are *not* the situs of the dispute. But *when*

the residence is *used* as a place of business \*\*\* then *during that time* picketing is not proscribed." (Emphasis in original.)

Defendant further asserts the following:

"The State and the Court construed the statutory exception narrowly. They interpreted the provision 'used as a place of business' to [mean] that it is applicable only when the *owner* uses the residence as a business. But the statute does not say: 'except when the owner uses the residence or dwelling as a business.' The statute refers to situs, not to the owner of the property. The statute refers to a *place* of business, not to a business. Nor does the statute contemplate that the residence somehow must metamorphose exclusively into a business or place of business. Thus, as here, 560 Powers Lane, Decatur, Illinois, was not only the residence of the owners, but also a place of business for Mark Wolfer, [and therefore] subject to the exception of the statute." (Emphasis in original.)

Defendant also argues that because "the plain language of the exception provision of the statute is subject to at least two valid interpretations," the statute is ambiguous, and Illinois law requires courts to resolve such ambiguities in favor of defendants in criminal cases.

We disagree with defendant's statutory interpretation. As did the trial court, we find section 21.1—2 of the Code clear and unambiguous. Specifically, we hold that the "place of business" exception contained in the first sentence of that section applies only when the *owner* of the residence in question uses it as a business.

The overarching rule of statutory construction is to ascertain and give meaning to what the legislature intended when it enacted the statute in question. In *People v. Scharlau* (1990), 141 Ill. 2d 180, 192-93, 565 N.E.2d 1319, 1324-25, the supreme court discussed statutory construction as follows:

"[T]he judicial role in construing statutes is to ascertain legislative intent and give it effect. To aid in accomplishing this, a court will seek to determine the objective the legislature sought to accomplish and the evils it desired to remedy. \*\*\*

Courts normally are required to interpret words in a statute according to their plain and ordinary meaning [citation], unless this would defeat the legislative intent [citation]."

Construing the residential picketing statute (section 21.1—2 of the Code) as defendant argues would give it an overly technical interpretation and would fail to provide the protection to residences the legislature intended. In section 21.1—1 of the Code, the legislature makes clear its desire to shelter and protect individuals and families within

their residences in order to avoid "disrupt[ing] home, family and communal life" (Ill. Rev. Stat. 1991, ch. 38, par. 21.1—1), unless they decide to use their residence as a place of business and thereby accept the consequences of doing so. If a homeowner chooses to use his residence as a place of business, then that decision brings with it the hurly-burly and turmoil of the outside business world, including picketing.

If we accepted defendant's interpretation of section 21.1—2 of the Code, a residence would obtain protection from picketing only when utterly bereft of any commercial involvement. In other words, if, as defendant argues, the situs of the business involving repair and remodeling of this residence is the residence itself, then it could as well be argued that a residence that receives cable television, contains a certain brand of furniture, has a particular make of automobile parked in its garage, or receives subscriptions to particular magazines or newspapers can appropriately be picketed by some person aggrieved by the local cable television company, the particular furniture or automobile manufacturer, or the newspaper or magazine publisher. Clearly the legislature intended no such result.

In an effort to persuade this court of the unreasonableness of the State's position that the "place of business" exception under section 21.1—2 of the Code applies only to the business of the residence's owner, defendant raises the following rhetorical questions in his brief: (1) "[I]s construction work performed on apartment complexes and condominiums exempt from picketing simply because the structures may be considered 'residential' for its occupants?" And (2) "[A]re owners of a residence exempt from employee pickets *** when they 'hire' individuals to come into their residence to perform services as employees," such as domestics? Consistent with what we find to be the plain language of the statute in question, we conclude that the answer to each of these questions is yes.

Further, contrary to defendant's argument, we find no ambiguity in either section 21.1—2 of the Code or the legislative intent underlying it. Thus, we hold that the doctrine of Illinois law that courts should resolve statutory ambiguities in favor of criminal defendants does not apply here.

The United States Supreme Court had occasion to construe an earlier version of section 21.1—2 of the Code, which then contained the following additional exception within the second sentence thereof: "[T]his Article *** does not prohibit the peaceful picketing of a place of employment involved in a labor dispute ***." (Ill. Rev. Stat. 1977, ch. 38, par. 21.1—2.) In *Carey v. Brown* (1980), 447 U.S. 455, 459-60, 65 L. Ed. 2d 263, 269, 100 S. Ct. 2286, 2289-90, the Supreme Court held that section

21.1—2 of the Code as then written violated the equal protection clause of the fourteenth amendment. After the *Carey* decision, the legislature enacted Public Act 81—1270 (Pub. Act 81—1270, §1, eff. July 3, 1980 (1980 Ill. Laws 288, 289)), amending section 21.1—2 of the Code, to delete the constitutionally offensive clause. Even though the Court in *Carey* did not address the precise issue before us in this appeal, its discussion regarding the policy underlying section 21.1—2 of the Code offers guidance nonetheless:

> " '[N]o mandate in our Constitution leaves States and governmental units powerless to pass laws to protect the public from the kind of boisterous and threatening conduct that disturbs the tranquility of spots selected by the people either for homes, wherein they can escape the hurly-burly of the outside business and political world, or for public and other buildings that require peace and quiet to carry out their functions, such as courts, libraries, schools, and hospitals.' *Gregory v. Chicago*, 394 U.S. 111, 118[, 22 L. Ed. 2d 134, 140, 89 S. Ct. 946, 950] (1969) (Black, J., concurring).
>
> Preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value. Our decisions reflect no lack of solicitude for the right of an individual 'to be let alone' in the privacy of the home, 'sometimes the last citadel of the tired, the weary, and the sick.' [Citations.] The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." (*Carey*, 447 U.S. at 470-71, 65 L. Ed. 2d at 276, 100 S. Ct. at 2295-96.)

Our construction of section 21.1—2 of the Code is fully consistent with the Supreme Court's discussion regarding preserving the sanctity of the home. Defendant's interpretation of that section would be destructive of these values, and we reject it.

### III. Sufficiency Of The Evidence

Although we agree with the State that the trial court correctly construed section 21.1—2 of the Code, we still must address defendant's argument that the evidence before the court in the stipulation of facts does not prove him guilty of residential picketing beyond a reasonable doubt. The argument of the parties on the sufficiency of the evidence focuses on the first sentence of section 21.1—2 of the Code, which reads as follows: "It is unlawful to picket before or about the residence or dwelling of any person, *except when the residence or dwelling is used as*

*a place of business.*" (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 21.1—2.) Citing the emphasized language, defendant argued at trial and to this court that the stipulation contains no evidence to show that the residence at 560 Powers Lane was not "used as a place of business" on the day defendant picketed that residence. In response, the State argues that "[t]he structure at 560 Powers Lane was unquestionably used solely as a residence," but cites nothing in the stipulation to support that assertion.

■ We earlier rejected defendant's interpretation of the "place of business" exception contained within the first sentence of section 21.1—2 of the Code as applying to anyone except the owner of the residence in question. However, the following question must still be addressed: What evidence in this record shows that Dr. and Mrs. Fulbright, the people who reside at 560 Powers Lane, *do* not use that residence as a place of business? The answer is that the record—namely, the stipulation—says nothing at all on this point. The significance of this silence depends on which party bears the burden of proof regarding this exception. For the reasons that follow, we hold that the State bears the burden of proof, and because the State failed to meet its burden, we must reverse defendant's conviction.

Our research did not reveal much law in this State regarding which party has the burden of proof concerning statutory exceptions. This court discussed this issue in *People v. Ellis* (1979), 71 Ill. App. 3d 719, 390 N.E.2d 583, in which the defendant was charged with driving while his license or permit was suspended or revoked. In 1977, the statute at issue in *Ellis* provided criminal penalties for any person driving a motor vehicle on any highway of this State "at a time when his drivers license or permit or privilege so to do *** is revoked or suspended ***, *except as may be allowed by a restricted driving permit issued under this Act.*" (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 95½, par. 6—303(a).) The defendant in *Ellis* argued that "the State had the specific burden of proving that he did not possess a valid restricted driving permit." (*Ellis,* 71 Ill. App. 3d at 720, 390 N.E.2d at 585.) This court rejected defendant's argument and wrote the following:

> "The general rule in Illinois is that where an act is made a crime and there are exceptions embraced in the enacting clause creating the offense which affect the description of that offense, the State must allege and prove that the accused does not come within the exception. *In other words, where the exception is descriptive of the offense it must be negatived in order to charge the accused with the offense.* On the other hand, if the exception rather than being a part of the description of the offense, merely

withdraws certain acts or persons from the operation of the statute, it need not be negatived, and its position in the act, whether in the same section or another part of the act, is of no consequence. Such exceptions are generally matters of defense. [Citations.] *In the instant case, the exception merely withdraws persons with restricted driving permits from the operation of the statute and in no sense is descriptive of the offense."* (Emphasis added.) *Ellis*, 71 Ill. App. 3d at 720-21, 390 N.E.2d at 585.

Following *Ellis*, we hold that the "place of business" exception contained in the first sentence of section 21.1—2 of the Code "is descriptive of the offense" of residential picketing, and therefore the State must prove the absence of that exception beyond a reasonable doubt in order to sustain a conviction of residential picketing. As we explained earlier, the gravamen of the offense of residential picketing is the picketing of *residences,* and when the owner of a residence chooses to use it as a place of business, the legislature did not intend to provide any special protections to that residence under section 21.1—2 of the Code. For that reason, we hold that the "place of business" exception is an exception "embraced in the enacting clause creating the offense which affect[s] the description of that offense." *Ellis*, 71 Ill. App. 3d at 720-21, 390 N.E.2d at 585.

Parenthetically, we note that the two other exceptions contained within section 21.1—2 of the Code are *not* "descriptive of the offense," and the State need not prove the absence of those exceptions beyond a reasonable doubt *in the absence of some evidence thereon being presented by the defense.* These two other exceptions are contained within the second sentence of section 21.1—2 of the Code and pertain to (1) a person peacefully picketing his own residence, and (2) the peaceful picketing of the place of holding a meeting or assembly on premises commonly used to discuss subjects of general public interest.

Our conclusion that the State has the burden of negating the "place of business" exception contained in the first sentence of section 21.1—2 of the Code is bolstered by the cases construing sections 24—1(a)(4) and 24—1(a)(10) of the Code (Ill. Rev. Stat. 1991, ch. 38, pars. 24—1(a)(4), (a)(10)). Section 24—1(a)(4) of the Code reads as follows:

"A person commits the offense of unlawful use of weapons when he knowingly:

\* \* \*

(4) Carries or possesses in any vehicle or concealed on or about his person *except when on his land or in his own abode or fixed place of business* any \*\*\* firearm." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 24—1(a)(4).)

In *People v. Chmilenko* (1976), 44 Ill. App. 3d 1060, 1062, 358 N.E.2d 1247, 1249, the court construed section 24—1(a)(4) as follows: "We hold that the exceptions contained in section 24—1(a)(4) [(Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(4))] are a part of the substantive definition of the offense. As such, the State must, by proof beyond a reasonable doubt, negate these statutory exceptions." See also Illinois Pattern Jury Instructions, Criminal, No. 18.02 (3d ed. 1992) (hereafter IPI Criminal 3d).

Section 24—1(a)(10) of the Code reads as follows:

"A person commits the offense of unlawful use of weapons when he knowingly:

\* \* \*

(10) Carries or possesses on or about his person, upon any public street \*\*\* or other public lands within the corporate limits of a city \*\*\* *except when on his land or in his own abode or fixed place of business*, any \*\*\* firearm." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 24—1(a)(10).)

In *People v. Proctor* (1980), 85 Ill. App. 3d 190, 196, 406 N.E.2d 570, 574, the court construed the above emphasized language of section 24—1(a)(10) of the Code and wrote the following: "The statutory exceptions must be negated by the State beyond a reasonable doubt." See also *People v. Anderson* (1983), 117 Ill. App. 3d 806, 808, 454 N.E.2d 34, 35; IPI Criminal 3d No. 18.02, at 13.

Last, we note that the information in this case described the residence at 560 Powers Lane and concluded with the following: "such residence or dwelling not being used as a place of business." Thus, the State appropriately charged the offense of residential picketing by alleging that the residence located at 560 Powers Lane was not being used as a place of business. However, at trial the State failed in the stipulation of the parties to present any evidence to meet its burden of proof to negate that exception.

### IV. CONCLUSION

For the reasons stated, we reverse the judgment of the circuit court of Macon County.

Reversed.

KNECHT and COOK, JJ., concur.