THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HENRY DAWSON, Defendant-Appellant.

First District (4th Division) No. 1—88—1865

Opinion filed April 18, 1991.—Rehearing denied June 3, 1991.

Randolph N. Stone, Public Defender, of Chicago (Evelyn G. Baniewicz and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Walter P. Hehner, and Candace A. Williams, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a bench trial, defendant, Henry Dawson, was found guilty of two counts of unlawful use of a firearm by a felon. (Ill. Rev. Stat. 1987, ch. 38, par. 24—1.1.) Defendant was sentenced to two concurrent three-year terms of imprisonment.

On appeal, defendant raises the following issues: (1) whether the trial court erred in denying his motion to quash arrest and suppress certain inculpatory evidence that was obtained after a warrantless entry into his apartment; (2) whether the trial court erred in failing to suppress evidence that was obtained as a result of searching a cloth bag located on his windowsill; (3) whether the trial court erred in failing to suppress evidence that was obtained as a result of a "pat down" search of his jacket; and (4) whether the trial court erred in denying his motion to suppress evidence where, he claims, the State failed to show attenuation between his statements and his arrest and search of his residence.

Defendant seeks reversal of the denial of his motion to quash arrest and suppress evidence; an order suppressing the evidence seized at his apartment; an order suppressing oral statements he made at

the police station following his arrest; and vacation of his conviction and remand for further proceedings.

We affirm.

Defendant's motion to quash arrest and suppress evidence was heard simultaneously with his bench trial. The evidence at trial established that on June 18, 1987, Chicago police officer Walter Tinner and his partner, Robert McClain, were assigned to investigate an aggravated criminal sexual assault case. Officers Tinner and McClain were members of the Area 4 incident team. Four other officers were also assigned to this case. The members of the Area 4 team were responsible for processing reports in the "follow-up" investigation of potential offenders.

At the time of their assignment, the officers were given the address, physical description, and nickname of the alleged offender in the aggravated criminal sexual assault case they were investigating. The officers then proceeded to 258 North Hamlin Avenue in Chicago to question the suspect, who went by the name of "Bru." According to Officer Tinner, the officers arrived at the third-floor apartment on Hamlin at approximately 7:30 p.m.

Defendant's niece, Tracey Mitchell, answered the door. The officers announced the purpose of their presence and inquired whether someone named "Bru" lived at that particular apartment. Tracey acknowledged that "Bru" did, in fact, live at the apartment and allowed the officers to enter the apartment. The officers were without a warrant when they entered the apartment.

Upon entering the apartment, Officer Tinner testified that he observed a man fitting the physical description of the suspected offender nicknamed "Bru." According to Officer Tinner, "Bru" was standing in the bedroom doorway, approximately 8 to 10 feet away from him. "Bru" was later identified as the defendant. Officer Tinner noticed that defendant held a small blue cloth drawstring bag in his hands. When defendant saw the officers, he made an "abrupt" move toward a windowsill in his bedroom. Defendant then placed the bag on the windowsill. Officer McClain retrieved the bag from the windowsill. A loaded revolver and residue from cocaine were discovered in the bag.

Defendant was then placed under arrest for investigation into the charge of aggravated criminal sexual assault and an additional charge of unlawful use of a weapon. Defendant was told that he would be transported to the 11th district police station for processing. Prior to leaving the apartment, defendant asked the officers whether he could get his jacket from the hall closet. Officer Tinner accompanied defendant to the closet. As defendant reached for his jacket, another officer

conducted a "pat down" search of the jacket. A fully loaded .38 caliber Smith & Wesson gun was discovered in the jacket pocket.

At the police station, defendant admitted that the guns belonged to him. He stated that he was in possession of the guns because he had been a victim of a robbery and felt that he needed the guns for his own protection.

At trial, it was stipulated that defendant had a prior armed robbery conviction and that the two weapons retrieved at the apartment belonged to defendant. After Officer Tinner testified, the State rested its case. Defendant's subsequent motion for a directed verdict was denied.

Defendant then called Tracey Mitchell to the stand. Tracey testified that she lived at the apartment on Hamlin with defendant and her cousin. At approximately 5 p.m. on the evening of June 18, 1987, Tracey heard a knock at her door. When she opened the door she observed six detectives. Tracey did not, however, open the burglar gate. According to Tracey, one of the officers told her they had a warrant. Tracey testified that her uncle was standing directly behind her when she opened the door. After the officers announced the purpose of their presence, Tracey unlocked the burglar gate and allowed the officers to enter the apartment.

According to Tracey, defendant was arrested after his identity was established. The officers then began to search the apartment. Tracey admitted that her uncle had a gun which was kept in a bag in the closet, but denied that he had a bag in his hands when the officers entered the apartment. Tracey also denied that her uncle requested a jacket from the hall closet prior to leaving the apartment. Tracey testified that at the time the officers arrived at the apartment, she was in the process of cleaning the apartment and putting away some clothes that had been washed earlier that day.

Defendant's daughter, Carol Dawson, was the next witness defendant called to testify. Carol was called as a corroborative witness. She testified that on June 18, 1987, she arrived at her father's house, after his arrest, at approximately 7 p.m. She observed Tracey hanging up some clothes that were on the floor of the front closet. Carol also noticed a plastic bag filled with what appeared to be wet clothes on her father's bed, along with some other clothes lying on the bed.

Defendant then testified in his own behalf. According to defendant, at approximately 5:30 p.m., he heard a knock at his front door. By the the time he arrived at the door, his niece had opened the door and was talking to several police officers. Defendant further testified

that after the officers entered his apartment they began to question him. When defendant asked whether the officers had a search warrant, defendant stated that "[t]hey just evaded the issue."

Defendant was subsequently handcuffed. Two handguns were later retrieved from defendant's closet. Defendant testified that the recovered guns belonged to his father and had been in his possession for more than one year.

After hearing all of the evidence, defendant's motion to quash arrest and suppress evidence was denied. Defendant was found guilty of two counts of unlawful use of a weapon by a felon. Subsequently, defendant's motion for a new trial was denied and he was sentenced to a term of three years for each count. It is from this decision that defendant now appeals.

Defendant first contends that the trial court erred in denying his motion to quash arrest and suppress evidence where the State failed to prove a valid consent to enter defendant's apartment. In *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, the United States Supreme Court held that "the Fourth Amendment to the United States Constitution *** prohibits the police from making a warrantless and non-consensual entry into a suspect's home in order to make a routine felony arrest." (*Payton*, 445 U.S. at 576, 63 L. Ed. 2d at 644, 100 S. Ct. at 1374-75.) However, where the consent is voluntarily given, a defendant's fourth amendment rights are not violated. (*People v. Bean* (1981), 84 Ill. 2d 64, 69.) Whether consent is voluntary depends upon the totality of the circumstances. (See *Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 20 L. Ed. 2d 797, 802, 88 S. Ct. 1788, 1792.) "Whether consent has been voluntarily given is a question of fact to be determined by the trial court, and that determination will be accepted by the reviewing court unless clearly unreasonable." (*People v. Daugherty* (1987), 161 Ill. App. 3d 394, 399.) We do not find the trial court's determination that the consent was voluntarily given to be unreasonable or manifestly erroneous.

This court notes, at the outset, that the version of the events as recounted by Tracey and defendant is vastly dissimilar from Officer Tinner's testimony. The trial court evidently believed Officer Tinner's version of the events as defendant was found guilty and his motion to quash arrest and suppress evidence was denied.

Officer Tinner, a 24-year veteran with the Chicago police force, testified on direct examination that after Tracey opened the door, the officers "inquired if [they] could come in. She let us in the front door." Officer Tinner did not testify that he or any of the other offi-

cers had used subterfuge or any deceptive tactics to gain entry into defendant's apartment. Further, there was no testimony that the officers used coercive tactics, such as drawing their revolvers, in order to enter the apartment.

On cross-examination, Officer Tinner testified that he asked Tracey whether "Bru" lived at the apartment with her. "[The] [y]oung lady said she was a niece of Bru. At that point in time she opened the burglar gates." Officer Tinner never testified that he or any of the other officers told Tracey that they had a warrant.

Tracey, on the other hand, testified that "when [the officers] came to the door [they] did not ask for a direct person. [They] just said [they] had a warrant." Tracey then testified that she opened the door after the officers stated that they had a warrant. Tracey also testified that defendant was standing directly behind her while she conversed with the officers at the door.

Defendant, however, did not corroborate Tracey's testimony, as he testified that he never heard the officers state that they had a warrant. It is conceivable that defendant would have heard the officers make such a statement due to his proximity to Tracey when the conversation at the door took place. In fact, defendant testified that the officers were evasive when he asked whether they had a warrant.

■■ ■ Due to the conflicting testimonies of Tracey, defendant, and Officer Tinner, and the circumstances of this case, we are not persuaded that the trial court erred in finding Officer Tinner's testimony to be more credible than Tracey's or defendant's testimony. A court of review will not substitute its judgment for that of the trial court where the evidence is conflicting. (*People v. Woods* (1980), 81 Ill. 2d 537, 542.) Moreover, as the State argues, a court of review will not disturb a trial court's ruling on a motion to quash arrest unless that finding is manifestly erroneous. (*People v. Cabrera* (1987), 116 Ill. 2d 474, 485-86.) We do not find the trial court's finding to be manifestly erroneous.

■ Next, defendant argues that the trial court erred in denying his motion to suppress evidence where the officers searched the cloth bag in which one of the guns was recovered. Defendant argues that the police retrieved the bag from the windowsill outside of his window, which was not within defendant's immediate control. When a valid arrest has been made, the arresting officer may search the area within the arrestee's immediate control. (*Chimel v. California* (1969), 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040.) Immediate control has been defined to mean "the area from within which [the arrestee] might gain possession of a weapon or destructible

evidence." *Chimel*, 395 U.S. at 763, 23 L. Ed. 2d at 694, 89 S. Ct. at 2040.

■ In the instant case, the bag containing the gun was already in defendant's hands when the officers entered the apartment. It was obviously within defendant's "immediate control." It was only after defendant saw the officers coming toward him that he attempted to dispose of the gun by placing it on the windowsill. Defendant's argument with respect to this issue simply fails.

■ Moreover, a violation of the fourth amendment may not be found if the seized incriminating evidence was in plain view in a place where the officer had a right to be; its incriminating character is immediately apparent; and there is probable cause to believe that the item is connected to the crime charged. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 465-66, 29 L. Ed. 2d 564, 582-83, 91 S. Ct. 2022, 2037-38.

In the instant case, as we previously held, the officers had a right to be in defendant's apartment. The bag was in plain view in defendant's hand when the officers entered the apartment. The incriminating character was immediately apparent as defendant, evidencing his intent to dispose of the bag, made an "abrupt" move toward the windowsill, the logical conclusion being that the bag contained some sort of contraband. The officers had probable cause to believe the bag was connected to the crime, as the crime was committed with a gun.

Furthermore, the bag containing the gun, as shown to this court by the defense, was of the type in which a gun could not be readily concealed or completely undetectable. It is not inconceivable, due to the weight and size of the gun, that the officers may have suspected that the bag contained a gun or other contraband.

This evidence, coupled with the fact that defendant attempted to dispose of the bag, is sufficient to show that the officers had probable cause to seize the bag. We, therefore, find that the trial court did not err in denying defendant's motion to suppress this evidence.

■ The third issue defendant raises is whether the trial court erred in denying his motion to suppress evidence where Officer Tinner's testimony was incredible with respect to the recovery of the second gun from defendant's jacket. Defendant maintains that he did not request his jacket prior to being taken down to the police station. He claims that he had no need of his jacket as the temperature was 89 degrees at 6 p.m. that evening. However, the trial court found Officer Tinner's testimony more credible than defendant's testimony. Where the evidence is conflicting, a court of review will not substitute its

judgment for that of the trial court. *People v. Woods* (1980), 81 Ill. 2d 537, 542.

Moreover, Officer Tinner testified that he and the other officers were also wearing jackets. Further, according to Officer Tinner, it was the practice of this particular section of the Chicago police force not to take a prisoner to the police station in "shirt sleeves." We, therefore, do not find Officer Tinner's testimony incredible. The trial court did not err in denying defendant's motion to suppress evidence based upon Officer Tinner's testimony.

■ Finally, defendant argues that the State failed to show attenuation between defendant's statements at the police station and his illegal arrest and the warrantless search of his apartment. "In the case of a confession following an illegal arrest, the confession must be 'sufficiently an act of free will to purge the primary taint of the unlawful invasion.' *** The burden of demonstrating attenuation between illegality and subsequent confession sufficient to render the confession admissible rests upon the prosecution." *People v. White* (1987), 117 Ill. 2d 194, 222, quoting *Wong Sun v. United States* (1963), 371 U.S. 471, 486, 9 L. Ed. 2d 441, 454, 83 S. Ct. 407, 416-17.

The State argues that defendant has waived this issue as he failed to raise this contention in either his motion to suppress or his post-trial motion. (See *People v. Enoch* (1988), 122 Ill. 2d 176.) While we agree with the State that defendant, arguably, has waived this issue, we find that there is no need for the State to prove attenuation. We previously found that the entry into defendant's apartment, his arrest, and the seizure of the guns found in defendant's possession were all legal.

Accordingly, the decision of the circuit court is affirmed. As part of our decision, we grant the State's request that defendant be assessed $75 as costs and fees for this appeal, pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, and *People v. Nicholls* (1978), 71 Ill. 2d 166.

Affirmed.

LINN and McMORROW, JJ., concur.