THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARREN JONES, Defendant-Appellant.

First District (3rd Division) No. 1—92—1460

Opinion filed May 25, 1994.—Rehearing denied September 26, 1994.

Frederick F. Cohn, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Christine Cook, and Thomas J. Darman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

Following a jury trial, defendant, Darren Jones, was convicted of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1989, ch. 56$^1$/2, par. 1401 (now 720 ILCS 570/401 (West 1992))) and was sentenced to 25 years' imprisonment. On appeal, defendant asserts that (1) the trial court erred by admitting prejudicial, irrelevant evidence of guns and money; (2) the trial court's cautionary instruction about his alleged friendship with a drug dealer did not cure the error; (3) the guns and cash were seized illegally; (4) his statements were improperly obtained after an illegal arrest; (5) he was denied effective assistance of counsel; (6) the trial court improperly admitted a police officer's interpretation that his "spot" meant that he sold drugs every day at a certain place on Harrison and Flournoy Streets; (7) evidence of his prior contacts with police officer Edward Mizera was prejudicial; and (8) cumulative errors were substantially prejudicial. For the reasons that follow, we affirm the judgment.

Prior to trial, a hearing was held on defendant's motion to suppress evidence and statements. Terry Jones, defendant's brother, testified that on April 6, 1990, he went to his mother's two-flat building at 2915 West Harrison Street to celebrate his mother's birthday. When Terry arrived around 10 p.m., several people, including his brother, Eddie Jones, were already there. An hour later, his mother answered a knock at the door. A police officer identified himself and asked whether defendant lived there.

According to Terry, the police searched the apartment and arrested everyone but his mother. Terry testified that he did not see a search warrant or hear his mother consent to the search. Terry stated that he did not see defendant until later in the police station.

Defendant testified that on April 6, 1990, at 11:10 p.m., he was standing in front of 2917 West Harrison Street. He had been talking to Theodore Fox for 15 minutes when Officer Nowlin drove up and got out of his car. Nowlin told both men to get against the wall, then patted them down before Officer Mizera told Nowlin to bring defendant to 2915 West Harrison Street. Defendant was taken into his mother's apartment, where 10 to 12 people were sitting and eating at the table. According to defendant, he knew nothing about the cocaine or $35,000 recovered from his mother's basement.

Officer Mizera testified that on April 6, 1990, at 10:15 p.m., he received information from police officer Edward Kulbida that narcotics would be delivered from a light-colored Chrysler in the 2900 block of West Harrison Street, to an individual known as "Fats," which is defendant's nickname. Mizera stated that he knew defendant because he had arrested him several times in the past.

After receiving the information, Mizera went to a building about 150 feet north of 2915 West Harrison Street. From that position, he saw defendant and another person sitting in a blue Blazer parked four or five cars west of 2915 West Harrison Street. Mizera later learned that the other person was Eddie Jones, defendant's brother.

Mizera watched the Blazer for 25 to 30 minutes during which time he observed several people milling around the area. Some people walked over to the Blazer, spoke to its occupants, and then left. When a light gray Chrysler parked in front of 2915 West Harrison Street, the people milling around spread out to different corners as if they had pre-assigned areas in which to stand. Over the police radio, an officer told Mizera that the individual in the Chrysler was Donald Smoot.

As Smoot got out of the Chrysler, defendant and Eddie left the Blazer and met him at the rear of the Chrysler. Smoot opened the trunk and took out a large red plastic bag. From that bag, Smoot took out a large clear freezer bag filled with white powder and put it into the trunk. He then gave the red bag to defendant, who checked its contents. The bottom of the red bag was bulging, indicating that something was in it. Based on Mizera's experience, he believed a narcotics transaction had taken place, so he left his surveillance spot and ran toward the three men.

Smoot closed the trunk and quickly walked away. As defendant and Eddie headed for 2915 West Harrison Street, defendant handed the red bag to Eddie. Mizera yelled for defendant to stop. Defendant turned and looked at him, but continued to walk at a slower pace. Defendant followed Eddie into the building, but immediately returned to the front porch.

As Mizera reached the building, he told defendant to stay where

he was, then went into the gangway alongside the building in case Eddie ran out the back door. After determining that Eddie was still in the building, Mizera returned to the front where Officer James Nowlin and defendant were standing. Mizera told Nowlin to detain defendant and then knocked on the building's front door.

A woman answered the inner door. Assuming that she was Mrs. Jones, Mizera identified himself and told her he needed to talk to her about her sons. When he asked who had just run into the building, she replied, "Nobody." Mizera testified that he saw Eddie run into the building, but not into the door that Mrs. Jones answered.

Mrs. Jones came to the outer door and let Mizera into the foyer. To the left was an open door leading into Mrs. Jones' first-floor apartment, where Mizera could see Eddie and several other people. Behind Mizera was a door that led to the basement. Mizera looked down the stairs and saw the red plastic bag lying at the bottom. Mizera called for backup.

When Sergeant Owens came inside the building, he watched the people in the apartment while Mizera investigated the red plastic bag, which contained several wrapped "pony packs" containing white powder. Mizera also saw a milk crate at the bottom of the stairs. Above the crate, he saw the butt of a gun in the ceiling joist. Investigating further, he found four guns in the ceiling. Meanwhile, Officer Gomez came into the basement, where he found two plastic bags containing a large amount of money. Subsequently, defendant and Eddie were arrested.

Officer Kulbida testified that on April 6, 1990, around 10 p.m., he received information from a reliable confidential informant that a large amount of narcotics would be delivered to "Fats" from an older model white Chrysler. The informant took Kulbida to the area around 2915 West Harrison Street to show him where the drop would take place. Kulbida then radioed Officer Mizera, and the two met to formulate a plan for surveillance.

After arguments by both parties, the trial court denied defendant's motion to suppress.

At trial, the testimony of Officers Kulbida, Mizera, and Nowlin was substantially the same as their testimony at the pretrial hearing. In addition, Kulbida and Mizera both testified that the four guns found in the basement were loaded. Mizera also stated that the only access to the basement was through the unlocked door across from Mrs. Jones' apartment. The other two doors in the basement were locked.

Mizera further testified that he read defendant his *Miranda* rights after he was handcuffed and put into Mizera's car. When

Mizera asked defendant about bagging (splitting up narcotics into smaller quantities) in his mother's apartment, defendant replied, "No one bags up in my mama's basement." According to Mizera, defendant agreed that a certain area of Harrison and Flournoy Streets was his "spot." Mizera explained that a "spot" is where cocaine is sold every day.

When Mizera asked defendant if he hung out with any other "dudes," defendant said, "No, just me and Bay Bay." Mizera indicated that he knew a Mr. Patterson who went by the nickname of Bay Bay. When Mizera stated that Bay Bay was involved in narcotics transactions, defense counsel objected. The trial court sustained the objection and instructed the jury to disregard Mizera's statement.

Mizera then stated that defendant said that the drugs belonged to his brother. Later, at the police station, defendant repeated the same story to Mizera.

Chicago police department chemist Denise Couch testified that she tested 516 of the 627 packets found by Officer Mizera. She stated that the substance contained in those packets tested positive at 76.62% pure cocaine and weighed 101.13 grams.

Chicago police officer Jeffrey Davis then testified that the street value of the cocaine was between $40,000 and $50,000. Davis explained that in April 1990, the average cocaine purchaser bought .2 grams, or a dime bag, worth about $10. He identified the pony packs recovered by Mizera as the type typically sold by drug dealers. In addition, Davis stated that he had recovered guns from drug dealers in the past during arrests.

After the State rested its case in chief, Shirley Jones, defendant's mother, testified that on April 6, 1990, her sons Eddie and Kenneth arrived at her apartment at 2915 West Harrison Street between 9:30 and 10 p.m. Her daughter LaWanda, who lived with her, and three of LaWanda's friends were also in the apartment. Her son, Terry, also known as Bey, arrived around 10:15 p.m.

According to Mrs. Jones, a police officer arrived around 11 p.m. looking for defendant. She told him that defendant was not there, but he was free to go into the apartment and look. After the officer stood in the doorway to her apartment, Mrs. Jones saw him turn around, open the basement door, lean down, and come up with a small white bag, about one-half inch long.

LaWanda Jones, defendant's sister, testified that on April 6, 1990, around 8 p.m., there was a birthday party for her mother. LaWanda stated that her brothers Terry, Kenneth, and Eddie arrived between 9 and 9:30 p.m. Around 11 p.m., a police officer came to the door. When her mother answered, the officer came in and told everyone to

put up their hands. LaWanda stated that she never saw the red bag or guns recovered from the basement.

Kenneth Jones, defendant's brother, testified that on April 6, 1990, he owned a blue and black Chevrolet Blazer. Shortly after 5 p.m., he and his brother Eddie went to a basketball game at Malcolm X College. After the game, they drove to 2915 West Harrison Street for their mother's birthday party. According to Kenneth, the keys to his Blazer were in his pocket. Although he had lent the Blazer to defendant on several past occasions, he did not lend it to him that night.

Defendant's testimony at trial was substantially the same as his testimony during the pretrial hearing. He added, however, that he never saw the drugs or guns police found in the basement. He also claimed that he never saw the red bag or stood next to a gray Chrysler that evening. According to defendant, several men who lived on the second floor of the building had access to the basement. Finally, defendant denied making any statements to the police. Defendant stated that he knew Mizera, who had stopped him several times for traffic violations, but did not know the two officers who originally detained him.

After deliberating, the jury found defendant guilty of possession of a controlled substance with intent to deliver. Defendant's motion for a new trial was denied, and he was sentenced to 25 years' imprisonment.

Defendant's first assertion is that the admission of the guns and money was improper evidence of other crimes, which was unnecessary to prove any fact in issue, was unconnected to the offense, and was highly prejudicial. Moreover, defendant argues that he conceded before trial that the large amount of drugs was sufficient to prove intent to deliver.

■ We find defendant's arguments unpersuasive. Evidence of large amounts of drugs, weapons, and cash is proper circumstantial evidence from which to infer defendant's intent to deliver, which is an element of the offense charged. The general test for admissibility of evidence is its relevance. Evidence is relevant if the fact or circumstance offered tends to prove or disprove a disputed fact or to render the matter at issue more or less probable. (*People v. Salazar* (1991), 211 Ill. App. 3d 899, 910, 570 N.E.2d 802.) Not only is a reasonable inference of intent permitted when the amount of the controlled substance possessed could not be designed for personal consumption (*People v. Brown* (1992), 232 Ill. App. 3d 885, 902, 598 N.E.2d 948), but the inference may be enhanced by the presence of weapons and large amounts of cash. *People v. Robinson* (1992), 233 Ill. App. 3d 278, 288, 598 N.E.2d 1348.

Therefore, we conclude that the trial court did not err in admitting the evidence of the guns and money. Evidence of weapons and large amounts of cash found in the basement was relevant to proving defendant's intent to deliver a controlled substance. It was not evidence of other crimes as defendant argues, but circumstantial evidence of the tools of the trade of being a drug dealer.

■ Next, defendant argues that he was substantially prejudiced after Officer Mizera testified that defendant was a friend of Mr. Patterson, who was involved in narcotics transactions. We disagree. Although it was error for the State to present the evidence about Mr. Patterson, any prejudicial effect was cured when the trial court immediately sustained the defense counsel's objection and instructed the jury to disregard that part of the officer's answer. *People v. Wielgos* (1991), 220 Ill. App. 3d 812, 581 N.E.2d 298.

Defendant next asserts that the cocaine, guns, and money were improperly seized in violation of his fourth amendment rights because there was no probable cause to search, no consent, and no exigent circumstances.

■ Initially, we find that the State waived its challenge to defendant's standing to object to the entry. Not only did the State not raise the issue of standing in the trial court, it acquiesced in the trial court's statement that defendant had standing. *People v. Keller* (1982), 93 Ill. 2d 432, 444 N.E.2d 118.

As to the merits of defendant's argument, we affirm the trial court's ruling on the motion to suppress. There is no fourth amendment violation if the seized incriminating evidence is in plain view in a place where the officer had a right to be; its incriminating character is immediately apparent; and there is probable cause to believe that the item is connected to the crime charged. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 465-66, 29 L. Ed. 2d 564, 582-83, 91 S. Ct. 2022, 2037-38.

We reject defendant's contention that the police officer's entry into the building was illegal because it was not consensual. Whether consent is voluntary depends on the totality of the circumstances. (*People v. Dawson* (1991), 213 Ill. App. 3d 335, 340, 572 N.E.2d 972.) It is a question of fact to be determined by the trial court and will be accepted by the reviewing court unless manifestly erroneous. *Dawson*, 213 Ill. App. 3d at 340.

The testimony of both Officer Mizera and Mrs. Jones was that Mrs. Jones gave Mizera consent to enter her apartment and to search for defendant. When Mizera knocked on the front door of the building, Mrs. Jones answered the door and invited Mizera into the foyer and subsequently into her apartment. Thus, we affirm the trial court's finding that Mrs. Jones gave Mizera consent to enter.

Defendant then claims that the entry into the basement was a separate entry without exigent circumstances. Defendant argues that the police officer needed a warrant to enter the basement because there was no consent to search the basement.

We disagree. Mizera's search of the basement was justified by the plain view doctrine and exigent circumstances. Among the factors to be considered for exigent circumstances are (1) whether the offense under investigation was recently committed; (2) whether there was any deliberate or unjustifiable delay by the officers during which time a warrant could have been obtained; (3) whether a grave or violent offense is involved; (4) whether the police officers were acting on a clear showing of probable cause; (5) whether there was a likelihood that the evidence would be destroyed; and (6) whether the police entry was made peaceably. (*People v. Foskey* (1990), 136 Ill. 2d 66, 75, 554 N.E.2d 192; *People v. Hebel* (1988), 174 Ill. App. 3d 1, 527 N.E.2d 1367.) In determining whether the police officers acted reasonably, the court must look to the totality of the circumstances confronting the officers at the time the entry was made. *Foskey*, 136 Ill. 2d at 75.

When Mizera was standing in the foyer pursuant to Mrs. Jones's consent, he looked down the basement stairs and saw in plain view the red plastic bag that he had seen before. Since he had a reasonable belief based on his knowledge and experience that the bag constituted evidence of a narcotics delivery, the search of the basement and the seizure of the bag were reasonable. *People v. Loggins* (1985), 134 Ill. App. 3d 684, 688, 480 N.E.2d 1293.

Defendant also argues that the police officers had no probable cause to search the red plastic bag because there was not enough evidence to support the officer's belief that a narcotics transaction had occurred.

Defendant is mistaken. A warrantless search is justified where there is probable cause to believe a crime has been committed and that a search of a particular place or thing will disclose evidence, fruits of a crime, or is necessary to protect the police officer. (*People v. Bradford* (1989), 187 Ill. App. 3d 903, 919, 543 N.E.2d 918.) Probable cause exists where the police officer has knowledge of facts that would lead a reasonable person to believe that a crime has occurred and that defendant has committed it. (*Bradford*, 187 Ill. App. 3d at 919; *People v. Wright* (1985), 111 Ill. 2d 128, 490 N.E.2d 640.) The determination of probable cause to search is to be made after examining the totality of the circumstances, including the police officer's knowledge based on his prior law enforcement experience. *Bradford*, 187 Ill. App. 3d at 919-20.

■ We conclude that the situation confronting Officer Mizera jus-

tified the warrantless search of the bag. (*People v. Stout* (1985), 106 Ill. 2d 77, 86, 477 N.E.2d 498.) Using his knowledge and experience as a police officer, Mizera determined that a narcotics transaction had occurred. After receiving information from a reliable confidential informant, Mizera and Kulbida set up a surveillance. Mizera watched Smoot hand defendant a red plastic bag after taking out a smaller bag filled with a white powder. Mizera saw defendant check the contents of the bag and give it to his brother Eddie, who went into his mother's building. Mizera then saw Eddie in his mother's apartment, which was across from the door leading into the basement. Those observations combined with Mizera's experience were enough to establish probable cause to believe that a crime had been committed and that searching the red plastic bag would disclose evidence and the fruits of the crime he witnessed.

■ Next, we find that plain view and exigent circumstances justified the seizure of the guns and the plastic bags filled with large amounts of money. Evidence of weapons and large amounts of cash are circumstantial evidence of a drug dealing operation. The first gun found by Mizera was in plain view. Once Mizera saw the crate at the bottom of the stairs, he merely looked up and saw the butt of a gun in the ceiling joist. Since probable cause had already been established, the situation was such that exigent circumstances existed. Consequently, we conclude that the police properly seized the guns and cash.

Next, defendant asserts that the statements obtained after his illegal seizure were improperly admitted into evidence. Defendant argues that his seizure was without probable cause because he was seized merely for touching and looking in the red plastic bag before it was ascertained that the red plastic bag contained any controlled substance.

■ Defendant's argument has no merit. There was probable cause to arrest defendant at the time he was seized by Nowlin. Officer Mizera watched Smoot give defendant a red plastic bag suspected of containing cocaine after taking out a clear plastic bag containing white powder from the red bag. Based on that knowledge, his own experience, and the informant's tip, Officer Mizera told Officer Nowlin to detain defendant, who was standing in front of 2915 West Harrison Street. Thus, Officer Nowlin's arrest of defendant was proper.

Next, defendant asserts that he was denied effective assistance of counsel because his attorney failed to request limiting instructions for the other crimes evidence, failed to make various objections, and failed to tender an alternative jury instruction on the law of possession.

To establish ineffective assistance of counsel under *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, a defendant generally must prove that his counsel's representation was deficient and that he was prejudiced by that deficiency. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246.) To show prejudice, the defendant must show that there was a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) In making that determination, the court must examine the totality of the circumstances. *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069.

■ In this case, we conclude that defendant received effective assistance of counsel. Any deficiency that may have occurred did not prejudice him since the evidence against him was overwhelming and any possible deficiencies were minor.

■ Next, defendant asserts that he was not proven guilty beyond a reasonable doubt. We disagree. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.

■ Finally, we conclude that defendant waived the other issues he raised in his appeal because he either did not object to them at trial (*People v. Enoch* (1988), 122 Ill. 2d 176, 188, 522 N.E.2d 1124) or did not present them sufficiently or properly in this appeal (*People v. David* (1986), 141 Ill. App. 3d 243, 264, 489 N.E.2d 1124). We decline to apply the plain error doctrine because none of the alleged errors affected defendant's substantial rights and the evidence was not closely balanced. *People v. Pickett* (1973), 54 Ill. 2d 280, 283, 296 N.E.2d 856; *People v. Carrizales* (1992), 240 Ill. App. 3d 893, 902, 608 N.E.2d 30.

■ Defendant finally argues that all of the evidence, even if not prejudicial standing alone, is prejudicial in its cumulative effect. We disagree, as we have found nearly all the evidence of which defendant complains properly admissible and the remainder not rising to the level of plain error.

Based on the foregoing, we affirm the circuit court's judgment.

Affirmed.

TULLY, P.J., and GREIMAN, J., concur.