THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM R. REED, Defendant-Appellant.

Third District    No. 78-264

Opinion filed June 5, 1979.

Robert Agostinelli and Charles Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (Marc D. Towler and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PER CURIAM: Defendant William R. Reed appeals from his conviction for unlawful use of weapons in violation of Illinois Revised Statutes, 1977, ch. 38, par. 24—1(a)(10). Defendant was tried by a jury in the circuit court of Peoria County in a case in which the court directed a verdict of acquittal on count II of the information at the close of the State's case and defendant was found guilty by the jury as to count I. Defendant was sentenced to serve a term of 2 to 6 years in the penitentiary.

On appeal in this court, defendant contends (1) that he did not receive effective assistance of appointed counsel by reason of the fact that the appointed counsel failed to raise the issue of inaccessibility (of the weapon for which he was convicted) as a defense; (2) that the arrest of defendant was unlawful and the making of the inventory search of the automobile was illegal and required the suppression of the shotgun found

in the search; and, (3) that the trial judge sentenced defendant, acting under a misapprehension as to what the sentencing rules are and consequently was unable to properly exercise judicial discretion in sentencing.

It appears from the record that Officer James Bridges of the Peoria Police Department was informed at a roll call on July 24, 1977, that a red-over-white Cadillac from St. Louis was in town and that the occupants were alleged to be drug dealers who might commit an armed robbery in Peoria. Bridges was told that the license plate of the car was "JK 3871." Bridges observed a car fitting the description but with a license plate number "JA 3874" as the vehicle was parked near the Eldorado Club on Jefferson Street in Peoria.

Bridges testified that he saw defendant leave the club and enter the automobile, joining a passenger who was already in the front seat of the vehicle. Bridges then said that the automobile accelerated rapidly, with a squealing noise coming from the tires, and actually ran through a stop sign. Bridges started following in his car and followed for several blocks, turned on his flashing red lights and the Cadillac was pulled over to the curb by Officer Bridges.

Defendant Reed testified that he was driving down Jefferson Street at approximately 1:30 a.m. and that when he passed the Eldorado Club, a woman he knew from work flagged him down, requesting a lift. Defendant agreed to give the woman a ride and after driving several blocks, noticed the flashing red light of a police car behind him and pulled over. Defendant then walked back toward the police car, leaving his own automobile very quickly, and asked what the trouble was. Bridges also left his automobile and requested the driver's license of defendant. According to defendant Reed, the officer also informed him that he was a drug suspect. After defendant Reed had produced his driver's license, the officer noted the woman passenger (referred to as "Taylor"). Defendant Reed looked back and forth several times from the woman to the officer.

A second police officer, Jack Hill, then arrived on the scene and stayed with the defendant Reed as Bridges went to the right front door of the Cadillac. Bridges opened the door and ordered the woman to step out in back of the car. As the woman alighted from the car, she called out to a Daries Petty, who was walking on the sidewalk. The Taylor woman and Petty approached each other in the area between the street and the sidewalk. Bridges again told the woman to step behind the car and told Petty to back away. Both ignored him. As Bridges walked toward the rear of the car he heard something metallic strike the ground and noticed a .25-caliber pistol near the left foot of the Taylor woman who was then standing five or six feet to the right of the officer and the defendant Reed. The Taylor woman, defendant Reed and Petty were placed under arrest

for unlawful use of weapons. Bridges also testified that defendant must have told him that the defendant was on parole. Bridges stated that the defendant told him that his wife was in Kansas City, Missouri, and that she owned the automobile. Defendant claims that he told the officer that his wife was at home, apparently in Peoria, and that the officer could get in touch with her. He stated that he gave Bridges his wife's telephone number and address. The officer determined that the car should be towed but, before the car was towed, Bridges conducted an inventory search of the automobile, pursuant to Police Department rules requiring every towed car to be searched to protect the owner's property as well as to protect the police and the towing service. The officer in unlocking the trunk with the key from the automobile found a loaded 16-gauge shotgun beneath a blanket in the automobile's locked trunk. There was some dispute as to whether defendant said that he and his wife owned the car and that both he and his wife owned the shotgun. One officer testified that defendant Reed told him that he, defendant Reed, had told his wife to place the shotgun in the trunk, believing that this would not violate his parole. Defendant denied that he said this. Defendant claimed that the gun belonged to his wife and testified that he had told his wife 10 days before his arrest to remove the gun from the house, as he had been instructed to do by his parole officer. Defendant claimed that he did not learn that the gun had been placed in the trunk of the car until after his arrest.

Defendant was specifically charged with knowingly possessing, in an automobile, within the corporate limits of the City of Peoria, a loaded 16-gauge shotgun. He was also charged with possessing the .25-caliber pistol (under count II). The charge asserted that the possession was within five years of defendant's release from a penitentiary upon a felony conviction, raising the offenses to Class 3 felonies (Ill. Rev. Stat. 1977, ch. 38, par. 24—1). Defendant's pretrial motion to suppress evidence, in which he alleged that his arrest and the stop and search were without probable cause, was denied. Defendant's theory of the case on the trial, as reflected by defense counsel's opening statement and closing argument, was that the evidence failed to show that defendant knew the shotgun was in the trunk.

Following the close of the State's case in the trial, the attorney for defendant moved for directed verdicts of acquittal as to both counts. As to count I, the defense argued that the evidence showed that someone other than defendant placed the shotgun in the trunk. As to count II, the defense argued that the evidence showed that the .25-caliber pistol was in the possession of someone other than defendant. The trial court granted the motion as to count II but denied it as to count I involving the shotgun which was in the locked trunk.

In the instant case, defendant was represented by appointed counsel.

Defendant was convicted of violating section 24—1(a)(20) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(10)), which provides that a person commits an offense of unlawful use of weapons when he knowingly carries or possesses in a vehicle or on or about his person within the corporate limits of a city, a loaded pistol, revolver, stun gun or laser or other firearm. The next section of section 24, referring to deadly weapons, is entitled "Exemptions," and among the numerous exemptions listed is one in subsection (b)(4):

"(b) Subsections 24—1(a)(4) and 24—1(a)(10) do not apply to or affect any of the following:

\* \* \*

(4) Transportation of weapons broken down in a non-functioning state or not immediately accessible."

Subsection (g) of section 24—2 states that an indictment or information based upon a violation of any subsection of article 24 on deadly weapons, need not negative any of the exemptions and that the defendant shall have the burden of proving such an exemption. Ill. Rev. Stat. 1977, ch. 38, par. 24—2(g).

■■ The Illinois Supreme Court has recently stated that the exemptions in article 24 are distinct from affirmative defenses in that they never become an issue for the State to prove. *People v. Smith* (1978), 71 Ill. 2d 95, 105, 374 N.E.2d 472.

It is apparent from the record that if defense counsel had raised the inaccessibility exemption, defendant should have been acquitted. Under the facts in the case before us, we have a situation where the trunk was locked. In order to gain access to the weapon, defendant would have been required to stop this vehicle, walk around to the rear of the automobile, insert the key in the lock and open the trunk. It appears clearly that under such circumstances, the gun was not immediately accessible.

In *People v. Cook* (1st Dist. 1977), 46 Ill. App. 3d 511, 361 N.E.2d 81, where defendant was convicted of unlawful use of weapons for having a gun under the hood of his automobile, the court held, as a matter of law, that the gun was not accessible. On the basis of the record it is equally true in the instant case.

The issue which we must resolve is whether defendant met his burden of proving, by a preponderance of the evidence, that he is entitled to the inaccessibility exemption as set forth in section 24—2(b) of the Criminal Code of 1961. While defendant did not present any evidence on the issue of inaccessibility, nor did his appointed attorney argue this exemption to the jury, such defense is still available, on the record, to the defendant. As stated in the case of *Wm. Wrigley, Jr. Co. v. Standard Roofing Co.* (1st Dist. 1945), 325 Ill. App. 210, 217, 59 N.E.2d 510:

"Defendant was not obliged to present testimony, but could rely as it did here upon factors unfavorable to plaintiff or favorable to itself developed from witnesses for plaintiff."

In the instant case, defendant was entitled to rely on testimony favorable to him developed from the State's witnesses. The police officer who searched defendant's car, testified for the State that he found the shotgun in the car's locked trunk. This was the uncontroverted testimony which is available as a matter of law to defendant and which we conclude entitled him to the benefit of the inaccessibility exemption.

In *People v. Cook* (1st Dist. 1977), 46 Ill. App. 3d 511, 361 N.E.2d 81, the State pointed out that the defendant did not raise the issue of his exemption, as a basis for denying the defense to defendant. In that case, the gun was found under the hood of the automobile. The *Cook* court construed the inaccessibility exemption as an affirmative defense, holding that once the State's evidence raised the issue of that defense, the State was required to prove that defendant did not fall within the exemption. In the *Cook* case, the court stated that since the evidence raised the defense of inaccessibility and, in fact, proved the defense, the State did fail to meet the burden of proof.

■■ Although the supreme court in the *Smith* decision (71 Ill. 2d 95, 374 N.E.2d 472) specifies that the *Cook* court was wrong in construing the inaccessibility exemption as an affirmative defense in requiring the State to negate it, the supreme court held that if the State's evidence raised an issue involving exemption, the *Cook* court did, in fact, reach the correct result because it found that the evidence not only raised the inaccessibility exemption but, also, proved it. In the instant case, the State was not required to negate the inaccessibility exemption, but because the exemption was proven by the evidence, defendant must receive the benefit of that evidence. Under the evidence in this cause, it is clear that the gun was not immediately accessible to the defendant. The evidence thus met the defendant's burden of proving the exemption, since there was not contradictory evidence on this issue. As a result, we find that the trial court should have directed a verdict for defendant in this case. The inaccessibility exemption was available to defendant and required a direction of verdict in favor of defendant.

By reason of the disposition which we have outlined as to the instant case, it is unnecessary that we discuss or consider the other issues raised by the defendant.

For the reasons stated, therefore, the conviction and sentence of defendant William R. Reed is reversed.

Reversed.

STOUDER, P. J., and STENGEL, J., took no part.