THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
THOMAS W. BOLLING, Defendant-Appellant.

Second District   No. 2—88—0422

Opinion filed April 20, 1989.

Newton E. Finn, of Waukegan, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan, and Joseph J. Ciaccio, Sr., of Ciaccio & Ciaccio, of Springfield (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

A jury found defendant, Thomas Bolling, guilty of the offenses of false personation (Ill. Rev. Stat. 1987, ch. 38, par. 17—2(a)) and unlawful use of weapons (Ill. Rev. Stat. 1987, ch. 38, par. 24—1(a)(4)). Defendant was sentenced to a seven-day term in the custody of the county sheriff, fined $300, and placed on a one-year term of probation. On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt of the offenses charged.

Officer Paul Pomazal of the Highland Park police department testified in behalf of the State. Pomazal stated that on July 8, 1987, at 6:46 p.m., he heard the screeching of tires and then the sound of an impact. Pomazal looked to his left and observed what appeared to be a head-on traffic accident in the northbound lanes of Route 41. Pomazal radioed for an ambulance and proceeded to the scene of the accident.

Upon arriving at the scene, Pomazal first approached an Oldsmobile to see if its two passengers were injured. After advising the dispatcher that the two passengers were injured, Pomazal approached defendant's car. Pomazal testified that defendant was seated in the passenger's seat of the car and talking on his car phone. Pomazal observed that defendant was bleeding from his head, and defendant told the officer that he believed he had no other injuries. Pomazal then asked defendant for his driver's license. Defendant reached into his shirt pocket, pulled out a black, single-fold wallet, and opened it. Pomazal observed a gold star inside the wallet. After defendant returned the wallet to his shirt pocket, Pomazal asked defendant, "Who are you with?" and defendant responded that he was with the military police.

Pomazal stated that defendant next pulled out a different wallet and produced his driver's license. As Pomazal escorted defendant to an ambulance, defendant told the officer not to move his vehicle because it contained top secret military equipment and paraphernalia.

Pomazal testified that when he returned to defendant's car, the trunk was open due to the accident. Pomazal retrieved a rifle, several rounds of rifle ammunition, a small safe, and some papers which were strewn about the trunk. After placing the items found in defendant's trunk into his car, Pomazal informed defendant of the items recovered. Defendant then stated that there was a 9 millimeter handgun in the glove compartment. Upon returning to defendant's car, Pomazal found a 9 millimeter handgun which was loaded with a 14-round clip and one round in the chamber. Pomazal also found a holster and a box of 9 millimeter cartridges in the backseat area.

Later that evening, Pomazal spoke with defendant at the Highland Park safety center. Defendant told Pomazal that the guns which were found in his car were not issued to him by the military. Defendant explained to the officer that the handgun was in its holster in the backseat prior to impact. Upon impact, the gun was thrown into the front seat, and defendant then placed the gun in the glove compartment. Defendant told Pomazal that the gun should not have been loaded when they found it. Defendant also mentioned that although he was not currently with the military police, he sometimes still carried his military police badge with him. Defendant next told the officer that he was a secret agent with the military and that the officers would not be able to confirm his assignment because nobody else knew about it.

Next, Officer Christopher Cipolla testified in behalf of the State. Cipolla testified that after defendant was taken to the hospital, Cipolla removed a 12-round clip and four loose rounds from defendant's shirt pocket. Cipolla identified the type of bullets found in defendant's possession as hollow-point bullets. Cipolla stated that neither the hollow-point bullets nor the 9 millimeter rounds were commonly used for target practice.

Next, Steven Kobiek, a senior chief petty officer of the United States Navy, testified in behalf of the State. Kobiek first met defendant in 1984 when they were assigned to the Navy brig, Great Lakes, Illinois. Kobiek testified that on July 8, 1987, defendant held the position of corrections specialist with the Navy. Defendant's position involved overseeing 12 to 15 staff members and ensuring that the prisoners were performing their daily assignments. To the best of Kobiek's knowledge, defendant was not a military police officer on July 8, 1987. Kobiek indicated that the badge which defendant displayed to Officer

Pomazal was not the type of badge issued to a corrections specialist.

Defendant's rendition of the events which took place on July 8, 1987, paralleled the testimony of the State's witnesses, with a few notable exceptions. Defendant testified that he was going target shooting with an FBI agent who was going to help defendant get a position with the agency. Defendant explained that he carried his military police badge with him because the agent asked him to bring any background information. As he was leaving his home, a friend brought him an athletic bag, which he had forgotten, containing the handgun and ammunition. According to defendant, the athletic bag was zipped shut and burst open during the accident. Upon realizing that the contents of the bag were thrown into the front seat area of his car, defendant locked the handgun in the glove compartment while placing some ammunition in his shirt pocket. Defendant testified that he received a skull fracture and needed 22 stitches in his head as a result of the accident.

When defendant was asked to produce his driver's license, he first opened the wallet containing his military police badge. Defendant testified that upon opening the wallet, Officer Pomazal asked him, "What was that?" to which defendant responded, "Military police badge." Defendant denied trying to pass himself off as a military police officer or a secret agent. Defendant further denied telling the officers that he sometimes carried his military police badge with him. According to defendant, the handgun found in his glove compartment was not loaded, and defendant stated that he never carried a loaded weapon. Defendant explained that he used hollow-point bullets to clean the barrel of his gun after taking target practice.

Officer Timothy Benton testified in rebuttal for the State. Benton first testified about his previous weapons training with the United States Marine Corps. Benton stated that he was familiar with hollow-point bullets and that hollow-point bullets would not be used to clean out the barrel of a gun.

After deliberating, the jury found defendant guilty of false personation and unlawful use of weapons. Defendant filed a motion for a new trial which was denied, and this appeal ensued.

■ Defendant first contends that the State failed to prove he committed false personation beyond a reasonable doubt. Section 17—2(a) of the Criminal Code of 1961 (Code) states that "[a] person commits a false personation *** when [he] exhibits or uses in any manner any decal, badge or insignia of any police organization when not authorized to do so by such police organization." (Ill. Rev. Stat. 1987, ch. 38, par. 17—2(a).) Defendant asserts that due to the severe injuries to his head,

his answers to Officer Pomazal's questions could not be construed as a violation of section 17—2(a). We disagree.

■ On review, a criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) Our function on review is not to retry the defendant; instead, the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261.

■ At trial, defendant offered no evidence which tended to show that he was delirious or lacked control over his mental faculties after the accident. Defendant, instead, claimed that he told Officer Pomazal that the gold star inside his wallet was a military police badge. Defendant's testimony was in direct conflict with Pomazal's testimony. Pomazal testified that upon being shown defendant's badge, he asked defendant who he was with, to which defendant responded that he was with the military police. This conflict in the trial testimony was resolved in favor of the State, and when the evidence is in conflict, we will not substitute our judgment for that of the jury. (See *People v. Racanelli* (1985), 132 Ill. App. 3d 124, 129.) Officer Pomazal's testimony established that defendant displayed a military police badge when he was not authorized to do so. Therefore, we conclude that a rational trier of fact could have found the essential elements of false personation beyond a reasonable doubt.

■ In his second appellate contention, defendant asserts that because his handgun was not immediately accessible, he was exempt from criminal liability. Section 24—2(b)(4) of the Code exempts from criminal liability the transportation of weapons broken down in a nonfunctioning state or not immediately accessible. (Ill. Rev. Stat. 1987, ch. 38, par. 24—2(b)(4).) Based on the uncontradicted testimony that his handgun was first zipped inside an athletic bag and that police had to pry open his glove compartment to get the handgun, defendant concludes that the handgun was not immediately accessible.

The exemption provided for in section 24—2(b)(4) is an affirmative defense, and it is the defendant's burden to prove by a preponderance of the evidence that he is entitled to the exemption. (*People v. Delk* (1981), 96 Ill. App. 3d 891, 902; *People v. Staples* (1980), 88 Ill. App. 3d 400, 403; see also Ill. Rev. Stat. 1987, ch. 38, par. 24—2(h).) We determine that defendant has failed to prove by a preponderance of the evidence that his handgun was not immediately accessible.

■ The appellate court has determined that a weapon is not im-.

mediately accessible when it is located under a car's hood (*People v. Cook* (1977), 46 Ill. App. 3d 511), locked in a car's trunk (*People v. Reed* (1979), 72 Ill. App. 3d 405), or locked in a storage box of a truck (*People v. Staples* (1980), 88 Ill. App. 3d 400). Other appellate decisions, however, have held that even though a weapon was located under the front seat of a car, it was not immediately accessible where the defendant was very stout and the car was very small and compact. (See *People v. Liss* (1950), 406 Ill. 419; *People v. Adams* (1962), 73 Ill. App. 2d 1.) In our opinion, the case which most closely parallels the factual situation present here is *People v. Johnson* (1977), 49 Ill. App. 3d 567.

▉ In *Johnson*, the defendant was a passenger in a car which was stopped by the police for speeding. As one of the officers approached the vehicle, he noticed a pistol in a holster on the rear seat of the car which belonged to the defendant. (*Johnson*, 49 Ill. App. 3d at 568.) In affirming the defendant's conviction for unlawful use of weapons, the court noted that it would have been very easy for the defendant to reach into the backseat to pick up the pistol if he so desired. *Johnson*, 49 Ill. App. 3d at 569.

Like the defendant in *Johnson*, defendant here could have easily retrieved his handgun from the rear seat of his car. The only deterrent which prevented defendant from retrieving the gun was the athletic bag's zipper. While it might have been somewhat more difficult for defendant to access the handgun when driving, we do not consider such difficulty so great to entitle defendant to a section 24–2(b)(4) exemption. More importantly, if defendant had stopped his car, he could have immediately accessed his handgun. To access the gun, defendant did not have to leave the driver's seat of his car or penetrate a locked compartment.

Furthermore, we fail to discern the significance of the fact that the police pried open his glove compartment to retrieve the gun. Defendant admitted that while he was driving to target practice, the gun was located in an athletic bag on the backseat of his car. Where defendant placed the gun subsequent to the accident is irrelevant. We conclude that defendant failed to prove that he was entitled to a section 24–2(b)(4) exemption by a preponderance of the evidence, and we affirm defendant's convictions.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

UNVERZAGT, P.J., and DUNN, J., concur.