THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK DWIGHT WILLIAMS, Defendant-Appellant.

First District (3rd Division)   No. 1—92—2587

Opinion filed September 21, 1994.

Rita A. Fry, Public Defender, of Chicago (Carol J. Milder, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Gael O'Brien, and John O'Grady, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a bench trial, defendant Mark Dwight Williams was convicted of unlawful use of weapons and failure to possess a firearm owner's identification card (hereinafter FOID).

On appeal defendant (1) claims entitlement to an exemption for the offense of unlawful use of weapons due to the alleged inaccessibil-

ity of the weapon, (2) challenges the sufficiency of the complaint because it failed to state an exception included in the statute defining the offense of unlawful use of weapons, (3) contests the sufficiency of the evidence on the grounds that the State failed to negate the statutory exception missing in the complaint, and (4) asserts the evidence was insufficient to prove his failure to possess a FOID card.

We affirm the convictions and file this opinion pursuant to Supreme Court Rule 23(a)(1) (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, effective July 1, 1994) because it may create a conflict with the third district regarding the application of statutory exemptions to the crime of unlawful use of weapons.

During a routine patrol on May 1, 1992, two police officers observed three men standing on a public sidewalk with their backs to the officers. As the police officers exited their car, they saw two of the men holding handguns and later identified one of the men as defendant. When the officers approached, the three men fled and the officers chased them down the street, into alleys and through gangways. During the pursuit, defendant threw his gun into a garbage can and continued to flee. After apprehending one of the men, the officers observed defendant nearby and arrested him.

The trial court found defendant guilty of unlawful use of a weapon and failure to possess a FOID card. In addition, defendant was convicted of a municipal ordinance violation for failure to exhibit a firearm registration certificate which defendant does not appeal.

The crime of unlawful use of weapons occurs when a person knowingly

"(10) Carries or possesses on or about his person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his land or in his own abode or fixed place ***." 720 ILCS 5/24—1(a)(10) (West 1992).

Exemptions from criminal liability for the offense of unlawful use of weapons exist for "weapons that are broken down in a nonfunctioning state or are not immediately accessible." 720 ILCS 5/24—2(b)(4) (West 1992).

Defendant asserts that he is entitled to the inaccessibility exemption for the offense of unlawful use of a weapon (720 ILCS 5/24—2(b)(4) (West 1992)) because the gun was discarded into a garbage can and was not loaded.

The State contends that the weapon possession offense for which

defendant was convicted was based upon defendant's possession of the weapon while he was standing on the sidewalk and during the course of flight down a street, through an alley, over a fence and down two gangways.

Evidence is sufficient to support a criminal conviction where, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Wilson* (1991), 143 Ill. 2d 236, 246, 572 N.E.2d 937; *People v. Navarrete* (1994), 258 Ill. App. 3d 39, 44, 629 N.E.2d 742.) Circumstantial evidence is sufficient to establish the unlawful use of weapons. *People v. Proctor* (1980), 85 Ill. App. 3d 190, 196, 406 N.E.2d 570.

The defendant bears the burden of proving his entitlement to the inaccessibility exemption by a preponderance of the evidence. *People v. Smith* (1978), 71 Ill. 2d 95, 105, 374 N.E.2d 472; *People v. Bolling* (1989), 181 Ill. App. 3d 845, 849, 537 N.E.2d 1100.

■ We find that defendant's conduct falls squarely within the statutory language of section 24—1(a)(10) for the offense of unlawful use of weapons since the evidence revealed that defendant carried a gun on public streets and alleys. Where defendant placed the gun after engaging in such criminal conduct, *i.e.*, a garbage can, is irrelevant and does not trigger the inaccessibility exemption. (See *People v. Dean* (1990), 207 Ill. App. 3d 640, 643, 566 N.E.2d 340 (police officers testified that the defendant held the gun before fleeing); *Bolling*, 181 Ill. App. 3d at 850.) The evidence was sufficient to find that the weapon possession occurred before defendant discarded the gun into a garbage can during the chase.

Defendant also claims that an unloaded gun should be considered "not immediately accessible" and thus provide a statutory exemption to criminal liability. Defendant relies on the third district's decision in *People v. Freeman* (1990), 196 Ill. App. 3d 370, 372, 553 N.E.2d 780, and urges us to adopt the *Freeman* court's definition of "immediately accessible."

Initially we note that the record does not reveal any evidence as to whether or not the gun was loaded. The trial court acknowledged the lack of evidence in this regard. Moreover, the trial court did not accept defendant's argument that the State's amendment of the complaint striking the word "loaded" constituted an admission by the State that the gun was unloaded. Interestingly, however, the police property inventory form in the record shows that defendant had six live rounds of ammunition when he was arrested. In any event, the evidence as to whether the gun was loaded is irrelevant to a conviction of unlawful use of weapons. See *People v. Trask* (1988), 167

Ill. App. 3d 694, 708-09, 521 N.E.2d 1222 (the fact that a concealed shotgun was not loaded did not impede a conviction for unlawful use of weapons).

■ No language in the statute requires a gun to be loaded to support a conviction of unlawful use of weapons. (720 ILCS 5/24—1(a)(10) (West 1992).) Moreover, the earlier version of the statute for unlawful use of weapons was specifically amended in 1981 to delete the word "loaded." Ill. Rev. Stat. 1981, ch. 38, par. 24—1(a)(10) (Pub. Act 82—343, eff. January 1, 1982); *People v. Johnson* (1976), 43 Ill. App. 3d 559, 357 N.E.2d 594 (prior to amendment, a complaint was substantively defective for failure to allege that the firearm was loaded).

Currently the statute provides two separate exemptions to the crime of unlawful use of weapons where the weapon is "broken down in a non-functioning state *or* [is] not immediately accessible." (Emphasis added.) 720 ILCS 5/24—2(b)(4) (West 1992).

For purposes of the statutory exemptions, accessibility refers to the proximity of the weapon to the defendant and the capability of the defendant to reach the weapon. *People v. Smith* (1978), 71 Ill. 2d 95, 102, 374 N.E.2d 472 ("[s]o long as the weapon in question is in such proximity to the accused as to lie within easy reach so that the weapon is readily available for use, it is 'immediately accessible' "); *People v. Thompson* (1991), 215 Ill. App. 3d 514, 575 N.E.2d 256 (a gun found under the front passenger seat of a car was readily accessible to the defendant, a passenger in the back seat); *Bolling*, 181 Ill. App. 3d 845, 537 N.E.2d 1100 (a handgun in an athletic zippered bag in the back seat of a car was accessible to the defendant driver); *People v. Reed* (1979), 72 Ill. App. 3d 405, 390 N.E.2d 962 (a shotgun locked in the trunk of a car was not immediately accessible to the defendant driver); *People v. Bean* (1978), 65 Ill. App. 3d 104, 382 N.E.2d 475 (a pistol in the pocket of a coat hanging about four feet from the defendant was immediately accessible); *People v. Johnson* (1977), 49 Ill. App. 3d 567, 364 N.E.2d 590 (a pistol in a holster located on the rear seat of a car was accessible to the defendant passenger).

On the other hand, the alternative exemption refers to the condition of the gun and requires that the gun must be not only non-functioning but also broken down, meaning disassembled. (*People v. Delk* (1981), 96 Ill. App. 3d 891, 902-03, 421 N.E.2d 1341 (testimony that the shotgun was unloaded, rusty and difficult to pump did not render the weapon broken down in a nonfunctioning state) (and cases cited therein); *People v. Worlds* (1980), 80 Ill. App. 3d 628, 632, 400 N.E.2d 85 (a gun which was rusty and missing a handle was broken

down in a nonfunctioning state).) "[E]ven if the weapon was inoperable, that alone would not prove the statutory exemption." (*Delk*, 96 Ill. App. 3d at 902; accord *People v. Hughes* (1970), 123 Ill. App. 2d 115, 122, 260 N.E.2d 34 (the State need not prove the firearm was in an operable condition).) Obviously a gun could be loaded but not operable due to broken parts or jamming.

In *Freeman*, the third district seemingly made no distinction between the two exemptions but rather viewed them as synonymous. The defendant in *Freeman* was convicted of unlawful use of a weapon for knowingly carrying a handgun in a motor vehicle. (*Freeman*, 196 Ill. App. 3d at 371.) The handgun at issue was a cylinderless pistol located under a cardboard box on the car's front seat. (*Freeman*, 196 Ill. App. 3d at 371.) The trial court believed that the pistol was within the defendant's immediate control and thus found him guilty. *Freeman*, 196 Ill. App. 3d at 372.

In reversing the conviction on appeal, the third district held that the exemptions applied because the pistol was missing an essential part, *i.e.*, the cylinder, and thus was broken down and could not be used as a functioning weapon. (*Freeman*, 196 Ill. App. 3d at 372.) The *Freeman* court also declared that

> "if a weapon is broken down and hence nonfunctioning, it is by its very nature not immediately accessible. In order for this pistol to be immediately accessible, it must have been immediately capable of being fired." *Freeman*, 196 Ill. App. 3d at 372.

To the extent, if any, that the third district in *Freeman* intended to equate the "not immediately accessible" exemption with the "broken down in a non-functioning state" exemption, we disagree. We do not believe that the statute can be interpreted to mean that the unloaded condition of a gun renders the gun "not immediately accessible" within the purview of the exemption. To allow "unloaded" as the equivalent to "not immediately accessible" defies not only logic and precedent but also ignores and defeats the dictates of the General Assembly which deleted the "loaded" element of the offense of unlawful use of weapons.

We find that the inaccessibility exemption does not apply to the condition of the weapon as being loaded or unloaded. It is difficult, if not impossible, to conceive of a situation where the proximity of the weapon to the defendant or the capability of the defendant to reach the weapon can be any closer than where the weapon is in the defendant's hand as in the instant case.

Second, defendant asserts that his conviction should be reversed because the complaint failed to contain one of three exceptions included in the statute under which he was charged.

The record reveals that the complaint, in relevant part, charged defendant with unlawful use of weapons "in that he knowingly carried on [his] person a firearm \*\*\* within the corporate limits of a City, City of Chicago" in violation of section 24—1(a)(10). Without objection from defendant's counsel, the State subsequently amended the complaint to add "while on a public way, and were not on their own abode or fixed place of business, or abode or land." Neither the original nor amended complaint included the exception which applies to "an invitee \*\*\* for the purpose of the display of such weapon or the lawful commerce in weapons." 720 ILCS 5/24—1(a)(10) (West 1992).

At the close of the State's case, defendant entered a motion for a directed finding based, among other issues, on the ground that the complaint was fatally defective for failing to include the invitee exception. The trial court denied defendant's motion and found that the amended complaint sufficiently appraised defendant of the offense with which he was charged. After trial defendant filed a motion to arrest judgment based again on the alleged defective nature of the complaint. Defendant does not suggest that there is any factual nexus between his conduct and the exception granted an invitee on the property.

The Code of Criminal Procedure of 1963 (Code) enumerates the requirements to be contained in a complaint, including the nature and elements of the offense charged. (725 ILCS 5/111—3(a) (West 1992).) The Code also allows amendment of a complaint at any time to cure formal defects. 725 ILCS 5/111—5 (West 1992); *People v. Flores* (1993), 250 Ill. App. 3d 399, 401, 621 N.E.2d 142.

To determine the sufficiency of a charging instrument, we must keep in mind that the purpose of these requirements in the complaint is to advise the accused of the nature of the charges against him, to enable the accused to prepare his defense and to serve as a bar to further prosecution for the same offense. *People v. Costello* (1992), 224 Ill. App. 3d 500, 506, 586 N.E.2d 742; *People v. Sherman* (1982), 110 Ill. App. 3d 854, 857, 441 N.E.2d 896; *People v. Sims* (1982), 108 Ill. App. 3d 648, 651, 439 N.E.2d 518.

The correct standard of review of an indictment or charge which a defendant has challenged at trial is whether, considering only the charging instrument, it states the nature of the offense and adequately sets forth each element of that offense. *People v. Johnson* (1992), 231 Ill. App. 3d 412, 423-24, 595 N.E.2d 1381.

■ A complaint for unlawful use of a weapon was not fatally defective for failing to allege the exception which applies when the accused is "on his own land or in his own abode." (*People v. Grant*

(1974), 57 Ill. 2d 264, 266, 312 N.E.2d 276.) Likewise, we find that the failure to declare the invitee exception does not constitute a fatal defect in the present case and the complaint sufficiently satisfied the purposes of a charging instrument, *i.e.*, it apprised defendant of the charge against him, enabled him to prepare a defense and stood as a bar to double jeopardy. See *People v. McBrien* (1986), 144 Ill. App. 3d 489, 495, 494 N.E.2d 732 (even though the indictment contained an incorrect statutory cite, it sufficiently informed the defendant of the charge against him for unlawful possession of firearms and defendant failed to demonstrate any prejudice as a result of the erroneous cite).

Third, defendant maintains that the State presented no evidence that he was not an invitee for the purpose of the display of the weapon or the lawful commerce in the weapon and, therefore, he was not proved guilty beyond a reasonable doubt.

The exceptions declared in the statute defining the offense of unlawful use of weapons must be negated by the State beyond a reasonable doubt. *People v. West* (1981), 97 Ill. App. 3d 275, 422 N.E.2d 943; *Proctor*, 85 Ill. App. 3d 190, 406 N.E.2d 570; *People v. Preston* (1978), 61 Ill. App. 3d 434, 378 N.E.2d 372; *People v. Chmilenko* (1976), 44 Ill. App. 3d 1060, 358 N.E.2d 1247.

█ The evidence revealed that the police observed defendant holding a gun while standing on a public sidewalk and pursued him on public sidewalks and alleys. Such conduct would allow the trier of fact to conclude that defendant was not merely displaying the weapon or engaging in "the lawful commerce of weapons." While the statute may be less than clear as to the interaction of an invitee with public streets, the evidence seems clear that defendant here was shown to be beyond the penumbra of the exception.

Lastly, defendant asserts that the State failed to prove beyond a reasonable doubt that he did not possess a FOID card because the evidence only established that he did not have a FOID card on his person at the time he was arrested and did not prove that he did not have a FOID card on his person at the time he was seen with a gun. Defendant notes that he was arrested about 20 minutes after he had thrown the gun in the garbage can and he lived about half of a block from that area. Accordingly, defendant argues that carrying a FOID card at the time of his arrest was not necessary.

The offense of failure to possess a FOID card occurs when a person possesses a firearm without having such card in his immediate possession. (Ill. Rev. Stat. 1991, ch. 38, par. 83—2 (now 430 ILCS 65/2 (West 1992)); *People v. Mourecek* (1991), 208 Ill. App. 3d 87, 93, 566 N.E.2d 841.) A person in possession of a firearm must have a FOID

card on his person because mere ownership of a FOID card by a person in possession of a firearm is not sufficient to comply with the statute. *Mourecek*, 208 Ill. App. 3d at 93; *People v. Cahill* (1976), 37 Ill. App. 3d 361, 364, 345 N.E.2d 528 (mere existence of a FOID card is irrelevant to the possession element of the offense).

A trier of fact may convict a defendant solely on circumstantial evidence. (*People v. Locascio* (1985), 106 Ill. 2d 529, 537, 478 N.E.2d 1358 (bench trial); *People v. Edwards* (1991), 218 Ill. App. 3d 184, 196, 577 N.E.2d 1250.) Circumstantial evidence is proof of facts or circumstances that give rise to reasonable inferences of other facts that tend to establish guilt or innocence of the accused. (*Edwards*, 218 Ill. App. 3d at 196.) A trier of fact may infer consciousness of guilt from evidence of a defendant's flight for the police. *People v. Nightengale* (1988), 168 Ill. App. 3d 968, 972, 523 N.E.2d 136.

■ The evidence established that defendant had a gun while being chased by the police, threw the gun into a garbage can and, only 20 minutes later, did not possess a FOID card. From these facts, a trier of fact could reasonably infer that defendant did not possess a FOID card while fleeing from the police with gun in hand.

In addition, we reject defendant's suggestion on appeal that the proximity of his home and the 20-minute time interval between his abandonment of the gun and his arrest somehow indicates that he may have had a FOID card when he held the gun but then placed the card at his nearby house after discarding the gun in the garbage can and before his arrest. Even assuming that defendant's theory is plausible or credible, the State is not required to rule out every "reasonable hypothesis of innocence" to convict. *People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344.

For all the foregoing reasons, we affirm defendant's convictions.

Affirmed.

TULLY, P.J., and CERDA, J., concur.