THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRENCE JONES, Defendant-Appellant.

Third District    No. 3—94—0712

Opinion filed March 22, 1996.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Raymond Kimbell III, State's Attorney, of Galesburg (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Defendant Terrence Jones' probation was revoked and he was sentenced to four years' imprisonment. Jones appeals, arguing that the State failed to prove by a preponderance of the evidence that he had violated his probation. We reverse.

The record reveals that on October 14, 1993, Jones pled guilty to unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(d) (West 1994)). He was sentenced to a 30-month term of probation. On February 8, 1994, the State filed a petition to revoke Jones' probation. The petition alleged that he committed the offenses of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1994)) and unlawful possession of a controlled substance with the intent to deliver (720 ILCS 570/401(d) (West 1994)).

A hearing on the petition to revoke probation was held. At the hearing, police officers testified that they had received numerous complaints about traffic at the residence of Florence and Leon Mulhatten which was located at 405 W. Third Street. The police had also received an anonymous tip regarding an assault rifle. Based upon this information, the police obtained a search warrant for the Mulhattens' residence.

On February 7, 1994, eight or nine police officers went to the Mulhatten residence to execute the search warrant. Upon entering the residence, the officers found four or five individuals, including Leon Mulhatten, in the kitchen area. These individuals appeared to have been smoking crack cocaine. A crumbled rock of cocaine and four or five cocaine pipes were found on the kitchen table.

The police then went upstairs to look for the assault rifle. In one of the bedrooms, the police found a small, open closet with clothes piled inside. One of the officers pulled some clothes off the pile and

discovered that both Marcus Miller and defendant Terrence Jones were hiding under the pile. The police searched Miller and found $223. The police also searched Jones but found nothing. A baggie containing 2.3 grams of cocaine was found hidden under some clothes on the floor of the closet. The baggie was discovered two or three inches from the baseboard of the east wall of the closet.

The trial court allowed police officer David Clague to testify as an expert in drug paraphernalia. According to Clague, cocaine and money are very seldom held by the same person. Usually one person will have the product and make the transactions while the other person holds the currency. Moreover, Clague opined that the cocaine found in the closet was for distribution rather than personal consumption. This conclusion was based upon the fact that the baggie found in the closet contained 15 to 20 rocks of cocaine with a value of between $400 and $500. Additionally, several other clear plastic baggies and a pager number were found elsewhere in the house.

Jones, testifying on his own behalf, stated that he went to the Mulhatten residence because his girlfriend had told him that Marcus Miller was there. Jones knew Miller and considered him a friend. When Jones first arrived at the Mulhatten residence, he was downstairs in the living room area and could not see into the kitchen at all. However, a few minutes later Jones heard the police force their way into the house. Jones panicked, saw Miller run upstairs, and followed him. Once upstairs, Jones followed Miller into the closet where the police later found them. Jones stated that he had not seen any drugs or drug paraphernalia in the residence.

Marcus Miller testified that he was at the Mulhatten residence on the day in question and had been convicted of unlawful possession of a controlled substance with the intent to deliver. According to Miller, when the police arrived, he ran upstairs. Jones followed him and the two ducked into a closet containing a lot of clothes. They covered themselves with the clothes to hide. Miller acknowledged that when he went into the closet he had a baggie containing approximately 2.5 grams of crack cocaine. Miller testified that while he was hiding under the clothes he could not see what he was doing. However, he tried to hide the cocaine by stuffing it under the closet wall in the background.

Following arguments by counsel, the trial court concluded that Jones had violated his probation. Jones' subsequent motion for a new hearing was denied and Jones was sentenced to four years' imprisonment. Jones appeals, arguing that the State failed to prove by a preponderance of the evidence that he had violated his probation by

possessing cocaine. Jones contends that there was no evidence that he possessed the cocaine or was even aware that there was cocaine on the premises.

The State responds that there was sufficient evidence that Jones was aware of the drug activity and had possessed the cocaine. In particular, the State notes: (1) Jones' flight from the police; (2) Jones' proximity to the cocaine when discovered; (3) the presence of narcotics paraphernalia and other people elsewhere in the house; and (4) Officer Clague's expert testimony suggesting that Jones possessed the cocaine because Miller had the money.

■ We shall first address the State's contention that Jones' flight to the upstairs closet could have been and probably was considered by the trial judge as evidence of Jones' consciousness of guilt. It is true that flight may be considered as evidence of consciousness of guilt. See *People v. Williams*, 266 Ill. App. 3d 752, 640 N.E.2d 1275 (1994). However, a defendant's mere presence at the scene of the crime, even when coupled with flight, is not enough to prove guilt. See *People v. Reid*, 136 Ill. 2d 27, 554 N.E.2d 174 (1990). The State was required to show some link between Jones and the cocaine. See *People v. Adams*, 242 Ill. App. 3d 830, 610 N.E.2d 763 (1993).

The State seeks to establish this link by noting Jones' proximity to the baggie of cocaine. However, although Jones was found inside a small closet near the baggie of cocaine, Marcus Miller was also found in that same small closet. Certainly, given the relatively small quantity of cocaine involved, Miller could have possessed it and hid it in the closet without Jones ever having been aware of its presence. *Cf. People v. Pintos*, 133 Ill. 2d 286, 549 N.E.2d 344 (1989) (defendant's knowledge of cocaine could be inferred where defendant was present when arrangements were being made for the drug transaction and where nine kilograms of cocaine were carried in open cardboard box). Moreover, Miller himself admitted hiding the cocaine in the closet and the State failed to present any reliable evidence to the contrary.

■ The State next notes the presence of narcotics paraphernalia and people in the kitchen and suggests that Jones must have been aware of the drug activity in the house. However, our review of the record reveals that the State did *not* establish that Jones was aware of the narcotics paraphernalia or the people in the kitchen. The police testified that upon entering the house they observed people, cocaine, and cocaine pipes in the kitchen. While in the kitchen, the police did not see Miller and Jones in the living room. The police officers' failure to see Miller and Jones supports Jones' testimony that when he was in the living room he did not, and could not, see into the kitchen area.

In a final effort to link Jones to the cocaine, the State relies upon Officer Clague's "expert testimony" suggesting that Jones must have possessed the cocaine because Miller had the money. However, we find Clague's testimony to be of questionable value. First, we note that Clague was only qualified as an expert in drug paraphernalia, yet his testimony concerned how drug transactions occurred. More importantly, Clague failed to clearly articulate a convincing basis for his conclusion that Jones possessed the cocaine. Obviously, the discovery of a large quantity of cash in Miller's pocket may tend to implicate Miller with the cocaine by suggesting that the money came from drug dealing. See *People v. Jones*, 269 Ill. App. 3d 797, 635 N.E.2d 961 (1994). However, Officer Clague's testimony that the discovery of the cash on Miller would serve to connect Jones to the cocaine was mere speculation.

In conclusion, there was a lack of evidence connecting Jones to the cocaine discovered in the closet. It is apparent that the defendant's probation was revoked based upon his mere presence in the vicinity where the cocaine was found. We believe that affirming such a result sets an unsettling and dangerous precedent. See *People v. Adams*, 242 Ill. App. 3d 830, 610 N.E.2d 763 (1993). The judgment of the circuit court of Knox County is reversed.

Reversed.

HOLDRIDGE, P.J., and LYTTON, J., concur.