THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TAMMY DONESKI, Defendant-Appellant.

First District (1st Division)   No. 1—95—1096

Opinion filed April 21, 1997.

Holstein, Mack & Klein, of Chicago (Michael J. Rovell and Lisa I. Fair, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Margaret J. Faustmann, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a bench trial, defendant, Tammy Doneski, was convicted of two counts of violating the Illinois Medical Practice Act of 1987 (225 ILCS 60/49 (West 1992)) for (1) representing herself to the public as being engaged in the practice of medicine, and (2) attaching the title of doctor or M.D. to her name indicating that she is engaged in the medical profession as a business. She was found to have engaged in these practices during the period of February through November 1993. Defendant appeals, raising the following issues: (1) whether count IV of the indictment properly charged the offense since it did not specify when or to whom defendant allegedly held herself out as being engaged in the practice of medicine; (2) whether the evidence failed to establish that defendant held herself out as engaged in the practice of medicine but, rather, established that she was an administrator and admittedly not a licensed or practicing physician; (3) whether the evidence established that defendant affixed the initials M.D. after her name on cards or stationery; and (4) whether defendant was unfairly surprised and deprived of the opportunity to confront witnesses when the court admitted into evidence letters first produced on the morning of trial with all but defendant's signature and the date redacted.

Defendant was indicted on five counts for committing the offense of "persons without license holding themselves out to the public as being engaged in diagnosis or treatment ailments of human beings" in violation of the Illinois Medical Practice Act of 1987 (Act) (225 ILCS 60/49 (West 1992)). A bench trial was held on counts IV and V of the indictment, alleging, respectively, that defendant "told personnel at the Center For Human Reproduction that she was a medical doctor" and that defendant "possessed, distributed and allowed to be distributed business cards and stationery with her name and the initials M.D. after it."

Before trial, defendant moved to dismiss the indictment for failure to state an offense and to dismiss count IV specifically on the ground that it was insufficient for purposes of double jeopardy. The court denied both motions. After a two-day bench trial, defendant was convicted of both counts on November 30, 1994. After hearing all factors in aggravation and mitigation, the trial court sentenced defendant to 18 months' probation, a $1,000 fine, 20 days of community service and court costs.

The following evidence was presented during trial. The Center For Human Reproduction (the Center) is an ob/gyn practice specializing in infertility. A new position had been created at the Center to handle patient complaints and to compile the Center's statistical results of various infertility treatments. In February or March 1993, Donna Havemann, the Center's executive vice-president, placed an ad in the Chicago Tribune to seek candidates for a quality assurance and research coordinator with "experience in data processing and statistics." The ad indicated that applicants should have a master's degree in public health or an equivalent degree; a medical degree, medical license, or Ph.D. was not required.

Defendant answered the ad with a resume indicating that she was a candidate in the combined M.D./Ph.D. program at the University of Chicago, and that she had received a bachelor of science degree at the University of Chicago in 1988. An enclosed cover letter stated that she was "in the process of completing [her] doctoral thesis research" and had "indefinitely postponed entering a medical residency program at this juncture" so that she may "pursue other options within the healthcare industry." In fact, defendant had not received a bachelor's degree from the University of Chicago or any other university and she was never enrolled in an M.D./Ph.D. combined program.

Defendant interviewed with the medical director of the Center, Dr. Norbert Gleicher. He offered defendant the position, which she accepted. While Dr. Gleicher admitted that defendant never indicated

that she was licensed to practice medicine in the State of Illinois, he was under the impression that she had completed the M.D./Ph.D. program at the University of Chicago.

After hiring defendant, Dr. Gleicher instructed Donna Havemann to have defendant's name put on the letterhead and on business cards followed by the designation "M.D./Ph.D." and the title "Director of Quality Assurance and Data Management." Defendant's name tag, worn on her lab coat at the clinic, bore the same initials and title.

Dr. Gleicher testified that he introduced defendant to staff members as "Dr. Doneski" and she never corrected him. Dr. Gleicher also introduced her externally as "Dr. Doneski" and heard the other staff members refer to defendant as "Dr. Doneski." In the Center's brochures and inserts, defendant was introduced as a graduate of the M.D./Ph.D. program of the University of Chicago. The State's other witnesses, Benetta Herman and Douglas Rabin, staff members at the Center, also testified that defendant was referred to and introduced as "Dr. Doneski." Ms. Herman stated that, on one occasion, she had called defendant "Tammy." Defendant instructed Ms. Herman to call her "Dr. Doneski" rather than "Tammy." Donna Havemann also testified that she recognized defendant's signature as "Dr. Doneski" on an "on-call schedule."

On cross-examination, Dr. Gleicher testified that defendant was not hired as a physician, was not to function as a practicing physician, and was not on the Center's malpractice policy as a physician. He stated that no one could make an appointment to see defendant for patient care and admitted that defendant's title was put on her name tag to identify her function as director of quality assurance. According to Dr. Gleicher, defendant had never treated a patient during her employment at the Center.

Defendant's responsibilities at the Center included taking and writing up patients' complaints, analyzing patient questionnaires, and reporting the outcome to Dr. Gleicher. Dr. Gleicher reviewed and revised defendant's work. Defendant did not offer to treat or suggest any treatment in her written work. Defendant was also given a pager and was made available for after-hours calls from patients seeking their test results. These were all nonmedical staff functions, requiring neither a Ph.D. nor an M.D.

Prior to hiring defendant, Dr. Gleicher did not ask to see defendant's diplomas. In the fall of 1993, he received a visit from two investigators from the department that licenses physicians and other healthcare professionals. He provided them with printed materials that showed that defendant was not employed as a practicing physi-

cian. Approximately one week later, Dr. Gleicher received notification from the University of Chicago that defendant never graduated from either its M.D. or its Ph.D. program. Dr. Gleicher confronted and then fired defendant.

In response to a subpoena for documents containing defendant's signature and indicia that she held herself out as a medical doctor, the Center produced, on the morning of trial, 14 letters written by defendant during the course of her employment at the Center. The Center asserted a privilege under section 8—2101 of the Code of Civil Procedure (735 ILCS 5/8—2101 (West 1992)), and the court allowed the letters to be admitted in redacted form, with all but the letterhead, date, and closing signature excised. Defendant objected both to receipt of the documents in redacted form and to their production on the morning of trial. The letters were admitted in completely redacted form over defendant's objection. On six of these letters, defendant had placed "M.D." and "Ph.D." following her signature.

Defendant made a motion for a directed finding at the conclusion of the State's case in chief, which was denied.

Defendant testified on her own behalf. She stated that she never told Donna Havemann or Dr. Gleicher that she was licensed to practice medicine. She acknowledged authoring the letter to Ms. Havemann in which she stated that she was in the process of completing her doctoral thesis research and was indefinitely postponing entering a medical residency program. Defendant acknowledged that she did not receive a bachelor's degree from the University of Chicago as was listed on her resume. She also testified that she was never enrolled in the university's M.D. or Ph.D. program.

Defendant testified that, during her employment at the Center, she did not treat or diagnose any patient, nor did she hold herself out to the public as being engaged in the business of treating or diagnosing patients. She did not engage in any conduct to solicit or establish a physician/patient relationship with anyone visiting the Center.

On cross-examination, defendant testified that she never told Dr. Gleicher not to mail the brochures because they falsely stated that she graduated from the M.D. and Ph.D. programs at the University of Chicago. She never told Donna Havemann to retract the Center's letterhead because defendant was not an M.D. or a Ph.D. Nor did defendant instruct Donna Havemann to correct her business cards. Defendant identified six of the State's exhibits where she signed her name followed by M.D. or Ph.D.

After hearing closing arguments on both sides, the court found defendant guilty of both counts. Count IV specifically stated that defendant "held herself out to the public as being engaged in the diag-

nosis or treatment of physical or mental ailments or conditions \*\*\* of human beings, to wit: told personnel at Center for Human Reproduction that she was a medical doctor." Count V specifically stated that defendant "attached the title doctor [or] M.D. \*\*\* to her or her name indicating that she is in [*sic*] engaged in the treatment of human ailments or conditions as a business, to wit: possessed, distributed and allowed to be distributed business cards and stationery with her name and the initials M.D. after it."

Defendant moved for an order of acquittal or, in the alternative, for a new trial. She claimed that the indictment did not fairly apprise her of the conduct that is alleged to have violated the Act. She also claimed that there was no evidence that she had held herself out as being engaged in the practice of medicine. She claimed that there was no evidence that she caused or requested the initials "M.D." to be placed after her name on business cards and stationery. Finally, defendant argued that she was unfairly surprised, denied the opportunity to prepare, and denied her constitutional right to confront witnesses when the letters were produced on the morning of trial and admitted into evidence in redacted form.

The court denied defendant's motion and conducted a sentencing hearing in which the court sentenced defendant to 18 months of probation, community service, and imposed a fine and costs. This appeal followed.

■ First, we are asked to decide whether count IV of defendant's indictment charges an offense. When the sufficiency of the charging instrument is attacked, the standard of review is to determine whether the instrument *strictly* complies with the requirements of Illinois law. *People v. DiLorenzo*, 169 Ill. 2d 318, 321-22, 662 N.E.2d 412, 413 (1996); 725 ILCS 5/111—3 (West 1992). With regard to a charging document, such as an indictment, Illinois law makes the following requirements:

> "A charge shall be in writing and allege the commission of an offense by:
>
> (1) Stating the name of the offense;
>
> (2) Citing the statutory provision alleged to have been violated;
>
> (3) Setting forth the nature and elements of the offense charged;
>
> (4) Stating the date and county of the offense as definitely as can be done; and
>
> (5) Stating the name of the accused, if known \*\*\*." 725 ILCS 5/111—3(a) (West 1992).

It is well established that the purpose of these requirements is to advise the accused of the nature of the charges against her, to enable the accused to prepare her defense, and to serve as a bar to future

prosecution for the same offense. *People v. Williams*, 266 Ill. App. 3d 752, 758, 640 N.E.2d 1275, 1280 (1994). "[T]he relevant inquiry is not whether the alleged offense could be described with greater certainty, but whether there is sufficient particularity to enable the accused to prepare a proper defense." *People v. Meyers*, 158 Ill. 2d 46, 54, 630 N.E.2d 811, 816 (1994).

■ Count IV of defendant's indictment contains all of the statutory requirements for a charging instrument. (1) The name of the offense is stated as "persons without license holding themselves out to the public as being engaged in diagnosis or treatment [of] ailments of human beings." (2) The statutory provision that defendant allegedly violated is listed as "Chapter 225, Section 60/49 of the Illinois Complied Statutes, as amended." (3) The nature and elements of the offense charged are that defendant "held herself out to the public as being engaged in the diagnosis or treatment of physical or mental ailments or conditions *** of human beings, to wit: told personnel at Center for Human Reproduction that she was a medical doctor." (4) Count IV recites the date and county of the offense as "on or about February 1993 thru October 1993 at and within the County of Cook, Illinois." (5) Finally, defendant's name, Tammy Doneski, is clearly identified.

Defendant's assertion that the indictment (1) does not sufficiently apprise defendant of the nature of the accusation and (2) subjects defendant to double jeopardy is without merit. The language in the indictment is sufficient both to inform defendant of the type of conduct that was violative of the Act and to prevent future charges from being brought against defendant for this specific offense during this time frame. While the indictment may have been more specific, we find that it met all mandatory requirements.

■ Next, we are faced with the question of whether the evidence established the charged offenses. A criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *People v. Jimerson*, 127 Ill. 2d 12, 43, 535 N.E.2d 889, 903 (1989). It is not the function of this court to retry a defendant when considering a challenge to the sufficiency of the evidence of his or her guilt. *People v. Boclair*, 129 Ill. 2d 458, 474, 544 N.E.2d 715, 722 (1989). Rather, determinations of the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn therefrom are the responsibility of the trier of fact. *People v. Nitz*, 143 Ill. 2d 82, 95, 572 N.E.2d 895, 900-01 (1991). On review, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); *Nitz*, 143 Ill. 2d at 95-96, 572 N.E.2d at 901.

■ Defendant claims that it takes more than just calling oneself "doctor" to violate the Illinois Medical Practice Act. Rather, a person must make representations that he or she is engaged in the practice of medicine as a business. While defendant admits that her conduct may have been morally culpable, she insists that it did not to rise to the level of being criminal. We disagree.

Human reproduction and infertility are highly sensitive medical issues, requiring the care and personal attention of a doctor. That defendant knowingly and intentionally adopted the title "M.D." without possessing any of the requisite qualifications renders her conduct not only immoral but criminal in this state.

The Illinois legislature explicitly decided that conduct such as defendant's should be illegal in the State of Illinois by enacting the Illinois Medical Practice Act. The statute reads, in relevant part, as follows:

> "If any person does any of the following and does not possess a valid license issued under this Act, that person shall be sentenced as provided in Section 59: (i) holds himself or herself out to the public as being engaged in the diagnosis or treatment of physical or mental ailments or conditions *** of human beings; *** or (v) attaches the title Doctor, Physician, Surgeon, M.D., D.O. or D.C., or any other word or abbreviation to his or her name indicating that he or she is engaged in the treatment of human ailments or conditions as a business." 225 ILCS 60/49 (West 1992).

The statute does not require that defendant hold herself out as being *licensed* to practice medicine in the State of Illinois, as defendant insists. Rather, the statute makes it criminal to represent oneself as being *engaged* in the practice of medicine when that person is not licensed to practice medicine in the State of Illinois.

■ The trial court apparently agreed with our understanding of the statute when it ruled that defendant violated the Act by having an office at the Center and holding the title "M.D." The court rejected defendant's argument that the inclusion of her title as director of quality assurance on the letterhead and her name tag acted as a qualifier and dispelled any public perception that defendant was a medical doctor. Rather, the court found that there would be no way for the public to differentiate between quality care at the Center and medical treatment.

We find the evidence to support the trial court's finding. By utilizing the initials "M.D./Ph.D." while being an employee of an infertil-

ity clinic, defendant represented herself as a doctor not only to the patients at the Center but the staff and general public as well. She signed letters on the clinic's letterhead with "M.D." or "Ph.D." added to her signature. In her application to the Center, defendant wrote a letter to Donna Havemann falsely stating that she was in the process of completing her doctoral thesis research when, in fact, defendant had never been enrolled in either an M.D. or a Ph.D. program. Defendant never corrected Dr. Gleicher when he introduced her as "Dr. Doneski" both inside the Center and externally. She instructed a staff member to call her "Dr. Doneski" rather than "Tammy." Defendant was aware that "M.D./Ph.D.," followed her name on the Center's stationery, her name tag and business cards, yet never brought it to anyone's attention that she was not qualified to hold either title. Defendant signed her own name on the "on-call schedule" as "Dr. Doneski." Clearly, a person not intending to hold herself out as a doctor would not conduct herself in such a manner.

■ We do not find that defendant's lack of active involvement in causing the initials "M.D." to be placed after her name on cards or stationery rectifies her conduct. As discussed above, by failing to notify either Donna Havemann or Dr. Gleicher that she was not an "M.D./Ph.D.," and by allowing the letterhead and business cards to continue to read "Tammy Doneski, M.D., Ph.D.," defendant led everyone at the Center and the public at large to believe that she was a medical doctor. Moreover, the evidence established that defendant did cause the "M.D./Ph.D." to be affixed after her signature on six different letters by signing her name in that manner. By representing herself as "Tammy Doneski, M.D., Ph.D.," while working at a medical clinic, defendant engaged in precisely the type of conduct that the legislature intended to prohibit by enacting the Illinois Medical Practice Act.

■ Finally, we consider defendant's claim that she was unfairly surprised and deprived of the opportunity to confront witnesses when the court admitted into evidence letters first produced on the morning of trial with all but defendant's signature and the date redacted. The court allowed letters with defendant's signature to be produced in redacted form after recognizing a privilege under section 8—2101 of the Code of Civil Procedure (735 ILCS 5/8—2101 (West 1992)). Section 8—2101 protects from disclosure all information and materials used by hospitals intended to improve quality control, patient care, and to reduce morbidity or mortality. *Zajac v. St. Mary of Nazareth Hospital Center*, 212 Ill. App. 3d 779, 788, 571 N.E.2d 840, 845-46 (1991); 735 ILCS 5/8—2101 (West 1992).

Defendant maintains that the court gave preference to the privi-

lege at the expense of her constitutional right to confront witnesses since she could not ascertain from the redacted letters whether they were written to patients or other doctors, or whether she was "ordering a salami sandwich or tickets to a hockey game." This argument, however, fails to recognize that section 8—2101 (735 ILCS 5/8—2101 (West 1992)) protects only medical information and if the letters did not contain such information, the privilege would not have been applicable and the court would not have ordered the letters to be redacted.

More significantly, the only relevant issue with respect to the letters is the manner in which defendant signed them. "[T]he trial court is granted broad discretion regarding the admission of evidence, and its decision will not be reversed on appeal unless that discretion has been clearly abused." *Zajac*, 212 Ill. App. 3d at 788, 571 N.E.2d at 846. The content of the letters and to whom they were written is not only privileged and confidential, but also irrelevant since defendant was indicted for holding herself out as being engaged in the practice of medicine, and only her signature on the letters is probative of this fact. The redacted letters established that defendant personally placed the title "M.D." after her signature on at least six different occasions, presenting herself to the public as a practitioner of medicine.

For the foregoing reasons, we affirm defendant's conviction on both counts.

Pursuant to *People v. Nicholls*, 71 Ill. 2d 166, 374 N.E.2d 194 (1978), and relevant statutory provisions (725 ILCS 5/110—7(h) (West 1992); 725 ILCS 130/13 (West 1992); 55 ILCS 5/4—2002.1 (West 1992)), we hereby grant the State costs and a fee of $100 for defending this meritless appeal. Additionally, pursuant to *People v. Agnew*, 105 Ill. 2d 275, 473 N.E.2d 1319 (1985), and section 4—2002.1 of the Counties Code (55 ILCS 5/4—2002.1 (West 1992)), we grant the State an additional fee of $50 for oral argument of this case.

Affirmed.

O'BRIEN and GALLAGHER, JJ., concur.